ELLIOT *vs.* CRONK'S AMINISTRATORS.

The statute requiring actions against public officers for acts done *virtute officii* to be brought in the county *where the fact complained of happened*, applies only, *it seems*, to *affirmative acts*, and not to *mere omissions* or neglect of official duty ; at all events, it does not apply to a case where the ordinary action for money *had and received* can be sustained.

Where an action would be *local* against a sheriff, or other public officer, *it seems* an action against his *representative* for the official acts of the sheriff, or other officer would also be *local*.

The *limitation* in the act concerning the duties of *executors* and *administrators*, requiring a suit to be commenced within *six months*, where a claim is *disputed* or *rejected* by the executor or administrator, being highly penal, is strictly construed.

An action against the representative of a sheriff, as for money had and received on an execution, is an action upon contract or legal liability, and not in the nature of an action for a *tort ;* the statute of limitations of *three years* is therefore not applicable to a case of this kind, and the claim of the plaintiff may be saved from the operation *of the statute of limitations* of *six years* by an admission of liability.

The omissions of a county judge to add the title of his office to his signature, when signing a judgment, does not vitiate the record ; the omission may be supplied by proof.

*It seems* that in an action against a sheriff for money received on an execution, it is enough to show the delivery of the execution, without producing the record.

THIS was an action of *debt*, tried at the Ontario circuit in December, 1832, before the Hon. DANIEL MOSELEY, one of the circuit judges.

The declaration was against the defendants, as the representatives of *James Cronk*, late sheriff of the county of *Niagara*. The first count set forth a judgment in favor of the plaintiff, against E. Hathaway, for $159,84, the issuing of an execution thereon, and the delivery of the same to the intestate on the 25th September, 1818, and then followed an averment that the intestate collected the money of the defendant in the execution, and neglected to bring the same into court, or to pay it over to the plaintiff. The second count was for money had and received. The defendants pleaded, 1. The general issue ; 2. That the cause of action set forth in the first count did not accrue within three years

ALBANY,
Oct. 1834.

Elliot
v.
Cronk's Ad-
ministrators.

before suit brought; and 3. That the cause of action contained in the second count did not accrue within six years, &c. To the second plea the plaintiff *demurred*, and to the third took issue. On the trial of the cause, the plaintiff produced an exemplification of the judgment roll in his favor against Hathaway, which purported to have been signed by the then first judge of Oneida, the name "M. S. Miller" being subscribed to the record, but without any addition or title of office attached. The counsel for the defendants objected to its being read in evidence, on the ground that the record did not appear to have been signed by an officer authorized to sign records. A witness on the part of the plaintiff testified that *Morris S. Miller* was, at the time the record purported to have been signed, first judge of Oneida, a counsellor, &c. and that he was about that time in the habit of having judgement rolls signed by him. The exemplification was read in evidence. The issuing of the execution in the vacation of August term, 1818, its delivery to the sheriff, and his admission shortly thereafter that he had collected the money, were duly proved. The admission of the sheriff was either that he had collected the amount of the execution in bills of the Bank of Niagara, or that he had deposited the money in the Bank of Niagara, and that the bank had suspended payment, in consequence of which it was proved that the sheriff was not pressed to pay over the money, in the hope that he might induce the bank or its officers to take up their bills, or make him good for his deposits. Thus the business rested until 1827, when the sheriff asked and obtained farther indulgence, fully admitting at the time his liability, and expressing his willingness to pay. In the autumn of 1831, the sheriff died, and on the 10th *November*, 1832, this suit was commenced; previous to the commencement of which, to wit, on the 9th *April*, 1832, the plaintiff caused his claim to be presented to one of the administrators of the sheriff, who answered that he did not know whether the demand was correct or not; that he had not investigated the affairs of the intestate, and could not then settle the claim; that he would consult counsel, and apprise the agent of the plaintiff of his determination; which he never afterwards did. The

counsel for the defendants insisted that the plaintiff was not entitled to recover, because, 1. That the plaintiff seeking to recover for the official neglect of the sheriff, in paying over money which he had collected, the action was *local*, and ought to have been tried in *Niagara*, instead of *Ontario; 2.* That the suit being for an official neglect of duty, was in the nature of an action of *tort*, and the *statute of limitations* having intervened, the claim of the plaintiff could not be revived by a new promise or admission of liability ; and 3. That the action was barred by the omission of the plaintiff to commence his suit within *six months* after the presentment of the claim to the *administrator*, and his *rejection* of it. The jury, under the charge of the judge, found a verdict for the plaintiff. The defendant moved for a new trial, and at the same time the *demurrer* to the defendants' second plea was argued.

J. A. *Spencer*, for the defendants.

J. C. *Spencer*, for the plaintiff.

*By the court,* SUTHERLAND, J. This, though in form an action of debt, is substantially an action for money had and received by the testator of the defendants, as sheriff of the county of Niagara. The provision of the revised statutes requiring "Every action against any public officer, &c. for or concerning any act done by such officer, by virtue of his office, to be brought in the county where the fact complained of happened, and not elsewhere," 2 *R. S.* 353, § 14, does not apply, I apprehend, to a case like this. That provision applies primarily, undoubtedly, and I am inclined to think exclusively to those official *affirmative* acts of public officers, by which, in the service of process or otherwise, they may interfere with the property or rights of third persons, and thereby become liable to an action. This construction is strengthened by the fact that the provision is not confined to public officers, but is extended to all others, who, by their commandment, act in their aid or assistance ; showing that affirmative acts were contemplated, and not mere *omissions*, or neglect of official duty.

ALBANY,
Oct. 1834.

Elliot
v.
Cronk's Ad-
ministrators.

What, in the language of the act, is the *fact complained of in this case ?* It is the omission of the sheriff to pay over to the plaintiff the money collected on his execution. Where did that fact happen? If it can be said to have happened at all, or at any particular place, it must have been in the county where it was the duty of the sheriff to have paid it. It was his duty to have paid it to the plaintiff, or his attorney, wherever he resided, or to have brought it into court, upon the return of the execution ; he was bound to pay over the money, without any other demand or notice than that given by the execution. The distinction between affirmative acts of public officers and the mere neglect or omission of an official duty is distinctly recognized in several provisions of our statutes, in relation to them. Thus, in the statute of limitations, 2 *R. S.* 296, § 22, it is provided that all actions against sheriffs and coroners, upon any liability incurred by them, by the doing any act in their official capacity, *or by the omission of any official duty*, except for escape, shall be brought within three years after the cause of action shall have accrued—and in the act giving double costs in certain cases, where judgment is rendered for the defendant. 2 *R. S.* 617, § 24. The first class of cases specified is, actions against public officers, &c. for, or concerning *any act done* by such officer, by virtue of his office, or for, or concerning *the omission* by such officer to do any act, which it was his official duty to perform. These provisions show the opinion of the legislature, that the mere *neglect or omission* of an official duty would not be embraced in the phraseology *of an act done by a public officer*. Without however undertaking to decide that this statute is not applicable to any case where the action against the officer is founded upon *an omission of an official duty*, it appears very clear to me that it cannot apply to a case where the ordinary action for money had and received can be sustained, and will afford an adequate remedy. 6 *Cowen*, 465. 1 *Wendell*, 534.

Where the action would be local as against the sheriff, I am inclined to think it would also be so against his representatives, although they are not expressly named. It is true, that one of the reasons, upon which the provision may have

been founded, does not apply to the representatives of the officer, to wit, that his personal presence, within the sphere of his jurisdiction, may be necessary to the public safety or convenience. This consideration, however, can apply but to a small portion of the officers embraced in the terms of the act. The act applies to all public officers, from the trustees and collector of a school district, up to the sheriff of a county. The act was intended, undoubtedly, to promote the convenience of public officers, and to protect them against vexatious and harrassing prosecutions for acts done by them in the discharge of their official duties—to save them the inconvenience and expenses of attending with their witnesses at places remote from their respective residences. These considerations apply in principle with so much force to representatives of the officer as to the officer himself.

But it is contended, *secondly*, that this case falls within the 38th section of the act concerning " the duties of executors and administrators in the payment of debts and legacies." 2 *R. S.* 89. That section provides that if a claim against the estate of any deceased person, be exhibited to the executor or administrator, and be *disputed or rejected by him*, and the same shall not have been referred, the claimant shall, within six months after such dispute or rejection, if the claim be due, commence a suit for the recovery thereof, or be forever barred from maintaining any action thereon. This section, it will be perceived, applies only to cases in which the claim is *disputed* or *rejected* by the executor. It is a highly penal provision, and ought to be strictly construed. The evidence does not show with the clearness and certainty requsite in such case, that the defendants disputed or rejected the plaintiff's claim. Mr. Morris, who presented the claim to the defendant Johnson, on the behalf of the plaintiff, testified that Johnson said he did not know whether the demand was just or not, that he had not investigated the affairs of the estate, that he would consult counsel and let the witness know the determination of the defendants, and that he never did subsequently make any communication to the witness upon the subject. Even if Johnson had not undertaken to let

the plaintiff's agent know his final determination, and had simply said he knew nothing about the justice of the demand, that he had not yet looked into the affairs of the estate, it would not have been a disputing of the account or a rejection of it, within the meaning of this act. The act should be such as fairly to apprise the claimant, that his demand would be contested.

3. What has already been said sufficiently disposes of the objection that this action is in the nature of an action for a tort, and therefore incapable of being kept alive or revived by a subsequent admission of liability by the defendants. It is not in the nature of a tort, but is much more in the nature of an action for money had and received. It expressly charges the receipt by the defendant's testator of the plaintiff's money and his neglect or refusal to pay it over, as the foundation of the action.

It was decided upon the demurrer in this case, to the defendants' first plea of the statute of limitations, that the action was one upon contract or a legal liability, and that the limitation of *six years* was therefore applicable to it, and not the limitation of *three years*, which applies to actions against sheriffs for any liability incurred by them, by the doing any act in their official capacity or by the omission of any official duty. 2 *R. S.* 295, § 18, 22. The evidence was abundantly sufficient to raise a new promise, and take the case out of the statute.

4. The exemplification of the record was properly admitted in evidence. It was proved that Morris S. Miller, by whom it was signed, was first judge of the county of Oneida at the time ; the omission to add his official character to his signature did not vitiate the record. But probably the execution without any record would have been sufficient to have been proved in this case. It is not for the sheriff or his representatives, in a case like this, to put the plaintiff upon the proof of a judgment. He is estopped from denying it.

Motion for new trial denied.