DENNISON and others *vs.* PLUMB and MILLER.

18b 89
50ad134

Where the sheriff seizes and sells the property of B., upon an execution against A., he is to be regarded as "doing an act in his official capacity," within the meaning of the statute requiring suits against sheriffs and coroners, for official acts, to be brought within three years.

APPEAL from a judgment entered upon the report of a referee. The action was against Plumb and William G. Miller, for unlawfully seizing, taking and converting certain goods and chattels, the property of the plaintiffs. Miller did not defend. Plumb, by way of new matter, alleged that the property taken was the property of one Robinson, and that Miller recovered a judgment against R. in the supreme court, and that on the 10th June, 1846, an execution was issued and delivered to him, the sheriff, to collect the judgment; and that by virtue of the execution, he levied upon and took the property, and afterwards sold the same. He also set up as a defense, the three years statute of limitations. The referee found that the defendants converted the property the 15th day of August, 1846. The action was commenced in December, 1849. The referee made a report in favor of the plaintiffs, and against the defendants, for the value of the property, &c. and the defendant Plumb excepted.

*H. K. Smith,* for the plaintiff, cited and commented upon (2 *R. S.* 296, *sec.* 22; *Morris* v. *Van Voast,* 19 *Wend.* 283; *Elliot* v. *Cronk's Adm'rs,* 13 *id.* 35; 2 *Esp. R.* 542; 3 *Burr.* 1742; 2 *Wend.* 611; 1 *Mass. R.* 530; 1 *Denio,* 501; 4 *id.* 446; 9 *East,* 364; 8 *Pick.* 133; 1 *Denio,* 327.

*G. W. Hampton,* for the appellants, cited (2 *R. S.* 296, § 22; *The People* v. *Schuyler et al.,* 4 *Com.* 173; 4 *Doug.* 714; 4 *Com.* 72; 6 *Hill,* 353; 7 *Eng. Com. L. R.* 827; 5 *Wend.* 309; 1 *Hall,* 579.

*By the Court,* MARVIN, P. J. The defendant Plumb was sheriff of the county of Erie in 1846. An execution was issued and delivered, in June of that year, to one of his deputies, in

favor of William G. Miller, and against the property of one Robinson, and the deputy sheriff levied upon the property of the plaintiffs, and on the 15th August, 1846, sold the same, assuming to act under and by virtue of the execution. This action was not commenced until December, 1849, more than three years after the cause of action accrued. And the question is, is the defendant Plumb liable. His liability for the acts of his deputy is not questioned. The position of the defendant is, that the three years statute of limitations applies to the case; and this is the question to be decided.

The statute is, " all actions against sheriffs and coroners upon any liability incurred by them, by the doing any act in their official capacity, or by the omission of any official duty, except for escapes, shall be brought within three years after the cause of action shall have accrued, and not after that period." This was a new provision in the revised statutes, and the revisers, in their notes, say it was " proposed in order to relieve the sureties of sheriffs." By the act for the more easy pleading in certain suits, (1 *R. L.* 155, § 1,) it was provided that certain actions against certain public officers, " for or concerning any matter or thing by them or any of them done by virtue of their office," should be brought in the county where the trespass or act was done. The supreme court, in *Seeley* v. *Birdsall*, (15 *John.* 267,) say that there is a distinction between acts done *colore officii* and *virtute officii ;* that in the former case the sheriff is not protected by the statute, when the act is of such a nature that his office gives him no authority to do it ; but when, in doing an act within the limits of his authority, he exercises that authority improperly, or abuses the confidence which the law reposes in him, to such cases the statute extends. We have here a clear view of the distinction between acts done *colore officii* and acts done *virtute officii.*

In *Morris* v. *Van Voast*, (19 *Wend.* 283,) the action was trespass ; the defendant alleged the taking of the property in his official capacity as sheriff, and pleaded the three years statute of limitation. The court, held that the statute had no application to the case. That it applies only to cases of *official lia-*

*bility,* such as enable the aggrieved party to resist the official bond. That if the defendant was guilty of a trespass, he could not maintain that the liability in the case was incurred by doing an act in his official character; that the act may have been done *colore,* but ·not *virtute officii.* This case is in point. As I understand it, the question involved in the present inquiry was then decided. The question arose upon the statute of limitations. It is the only case cited, or which I have found in our reports, where the question arose upon the provision of the statute we are considering. *Elliot* v. *Cronk's Administrators,* (13 *Wend.* 35,) was an action against the representatives of Cronk to recover money collected by Cronk as sheriff; and the three years' limitation was pleaded, and the plaintiff demurred. It was held that the action was upon contract or legal liability, and not in the nature of an action of tort, and that therefore the statute of limitations of three years was not applicable.

It seems to have been assumed that the language in the statute—doing an act in his *official capacity*—means the same as doing an act *virtute officii ;* and the argument is, that as the sheriff is not authorized by law, upon an execution against A. to take the property of B., his taking the property of B. is a trespass, an act not done in his *official capacity* or *virtute officii,* though he may have *assumed* to act as sheriff in his official capacity, and by virtue of the execution. In short, that he is to be regarded as a naked trespasser, and can derive no consideration from the fact that he was sheriff, and had an execution against A. The language of the statute touching venue is, "for or concerning any act done by such officer *by virtue* of his office." (2 *R. S.* 353, § 14.) The same language is used, touching the trial. (*Id.* 409, § 3.)

The condition of a sheriff's bond, with sureties, is, that he "shall well and faithfully in all things *perform and execute the office* of sheriff of, &c. without fraud, deceit or oppression." (1 *R. S.* 378, § 47.) In *Ex parte Reed,* (4 *Hill,* 572,) judgment had been recovered against Hart, the sheriff of New-York, in trespass, for seizure of the goods of Reed, under a *fi fa.* Hart had attempted to justify the seizure as sheriff. A motion was

made for leave to prosecute the official bond of the sheriff. It was denied, upon the ground that the act of Hart for which judgment had been recovered did not come within the condition of the bond. It was held that the words could not be extended beyond nonfeasance or misfeasance in respect to acts, *which by law he is required to perform as sheriff;* that the sureties could not be made liable for the consequences of a trespass committed by the sheriff. Judge Cowen says, the charge of a trespass assumes that the act could not have been *virtute officii.* It is no more the act of a sheriff, because done *colore officii,* than if he had been destitute of process.

In *The People ex rel. Kellogg* v. *Schuyler and others,* (5 *Barb.* 166,) the action was upon the official bond of Schuyler, as sheriff. Judgment had been recovered by the relator against Schuyler, in an action of trespass, for taking the property of the relator. Schuyler, as sheriff, had taken the property of Kellogg, the relator, upon an attachment against the property of one Foy. The supreme court, in the third district, held that 'no action could be maintained upon the bond. They regarded the act of the sheriff as a trespass done *colore officii,* and not an act done *virtute officii.* This case was taken to the court of appeals, and there the judgment of the supreme court was reversed. (*See* 4 *Comst.* 173.) The case *Ex parte Reed* must, I think, be considered as overruled.

Is the case of *The People* v. *Schuyler* a controlling authority in the present case ? The condition of the bond in that case was, that Schuyler should well and faithfully in all things *perform and execute the office of sheriff.* In one case the statute is, by the doing any act in his *official capacity.* Schuyler was not sued for omitting or neglecting to perform and execute the office of sheriff. He was sued, and judgment recovered against him, for a trespass; for an act done not authorized by the attachment against the property of Foy, and not justifiable by the law. The act was an act which has been characterized as an act *colore officii.* Judge Gardiner, without noticing the distinction between acts done *colore officii* and *virtute officii,* argues that the acts of the sheriff came within the condition of the bond.

He held that the attachment was delivered to Schuyler as a public officer; that he received it not *colore officii*, but in virtue of his office ; that he assumed to act under it as sheriff ; that his sureties undertook "that he should faithfully execute" the process ; and he adds, " if he had in all things" performed his duty, he would have seized the goods of Foy or returned the writ; instead of which he levied upon the goods of Batchellor as the property of the defendant in the attachment. Upon principle, and upon grounds of public policy, it seems to me that the responsibility of his sureties should be different from those they would incur, if the sheriff had entered upon the premises of the relator and removed his goods without any process whatever. In the last case supposed, the sheriff would act in his own right, and might be resisted, as any other wrongdoer. In the one before us he was put in motion by legal authority, invoked in behalf of others, and could command the power of the " county' to aid him in its execution." Apply this reasoning to the present case, and what will be the result ? Plumb, the sheriff, or, which is the same thing, his deputy, received the execution against Robinson, as a public officer. He assumed to levy and sell as sheriff, under and by virtue of the execution. Is his responsibility different from what it would have been had he taken the property of the plaintiff without any process ? In other words, is he to be regarded as " doing an act in his official capacity" within the meaning of the act limiting actions to three years, or is he to be regarded as a naked trespasser, acting without process against any one ? The revisers say that this three years' limitation is new, and that it was proposed in order to relieve the sureties of sheriffs. The court of appeals holds that the sureties of the sheriff are liable for the acts of the sheriff, when he takes the property of A. upon an attachment against B. If we hold that the sheriff in such a case cannot avail himself of the three years' limitation, it will follow that the sureties cannot be relieved from liability for such an act of the sheriff short of six years.

Is it quite clear upon authority—omitting *The People* v. *Schuyler*—that the statute of three years' limitation should not

be applied to this case ?   The argument against its application is, that it does not include acts done by the sheriff *colore officii.* Judge Cowen, in *Ex parte Reed, (supra,)* after arguing strongly against the liability of sureties for a trespass committed by the sheriff, by taking the property of A. upon an execution against B., says, " The statutes restricting venues and requiring notice before suit brought, in cases of acts done by virtue of, or in the execution of certain offices, have been extended to those done *colore officii,* upon *consideration of that protection against harassing litigation which is due to officers falling into mistakes while acting in good faith.*"   He adds, " Even that has been doubted, with us."   He cites 15 *John.* 267, &c. and some English cases ; and adds, " The courts say that unless the acts be thus extended, they would be nugatory.   All this, I admit, may well be said by way of enlarging such remedial statutes.   Yet it is going beyond the words.   It is extending them by construction."   Judge Cowen does not condemn the construction given to these statutes relating to *venues,* and which includes acts done *colore officii,* but as I understand him approves of them, though he insists that they are not applicable to a case where the sureties of the sheriff are sought to be made liable for a trespass of the sheriff, &c.

*Seeley* v. *Birdsall,* (15 *John.* 267,) referred to by Justice Cowen, has been herein before cited.   It was an action on the case, against the sheriff of Seneca county for a *false return,* tried in Cayuga county.   It was held that the action was *local,* and that the burden of proof, to show that the act was done in the county of the trial, was upon the plaintiff.   The court there state the distinction between acts done *colore officii* and *virtute officii,* as herein above stated.   Hence the remark of Judge Cowen, that the English cases as to venue, including acts done *colore officii,* have been doubted with us.   The case does not conflict with the English cases.   *Chitty* (1 *Plead.* 272) says : " The venue against a justice, constable, &c. for an act done in the execution of his office, seems to be local, if the party acted under *color of his office, intending* to act in his official character, although it did not strictly justify him ; for he would want no

Dennison *v*. Plumb.

protection, if in reality he acted in the due course of his office."
In *Straight* v. *Gee & Garver*, (2 *Starkie*, 445,) the action was
trespass for assaulting and imprisoning the plaintiff. The plain-
tiff was arrested without process, upon suspicion of a crime, in
Middlesex county. The venue was laid in London. Garver
was a constable. By the statute 21 J. 1, c. 12, § 5, it was pro-
vided, that any action brought against a constable and certain
other officers, for any thing done " by virtue or reason of their
or any of their office or offices," the action should be laid in the
county where the trespass or fact was done and committed, and
not elsewhere. Abbott, C. J., on the trial, said, " By the words in
the statute, *by virtue of his office*, was meant, that he was acting
under color of his office, intending to act in the character of con-
stable; for if he in reality acted in the course of his office, he
would want no protection." And he directed the jury that Gar-
ver was entitled to their verdict.

Actions are prohibited in England by statute, unless previous
notice is given, in certain cases. No action can be brought
against a justice of the peace, " for any thing by him *done in the
execution of his office*," until a notice of one month has been
given. This statute has been applied in numerous cases where
the justice acted without authority and was a trespasser, but
where he acted in good faith, under the impression that what he
did was within the scope of his duty as a magistrate. (*Jones* v.
*Williams*, 1 C. & P. 459. *Weller* v. *Toke*, 9 *East*, 364.)

An action is not to be brought against any excise officer, " for
any thing done in the execution or by reason of his office," until
after notice. In *Daniels* v. *Wilson*, (5 *T. R.* 1,) it was held,
under this provision, that an excise officer was entitled to notice
before an action was brought against him, for an act not war-
ranted by his official capacity, if done *bona fide*, in the supposed
execution of his duty; such as the assaulting an innocent person
whom he supposed to be a smuggler employed in removing
goods. (*See also Greenway* v. *Hurd*, 4 *T. R.* 553; *Bird* v.
*Gunstan*, 2 *Ch. R.* 459.)

It is also provided by statute, 24 G. 2, ch. 44, § 8, " that no
action shall be brought against any justice of the peace for

*any. thing done in the execution of his office,* or against any constable, head borough or other officer or person acting as aforesaid, unless within six calendar months after the act committed." In *Parton* v. *Williams and others,* (3 *Barn. & Ald.* 330,) it was held that where a constable, acting under a warrant commanding him to take the goods of A. takes the goods of B. believing them to belong to A., he is entitled to the protection of the statute, and that an action against him must be brought in six calendar months. Abbott, C. J., Bayly, Holroyd and Best, Js. delivered opinions. Is not this case in point? The language of the statute is for "any thing done in the execution of his office." Our statute is, "by the doing any act in their official capacity." It may be remarked, that all the above cases under the English statutes touching venue, notices to officers of intended suits, and the statute of limitations, were, for acts done *colore officii,* and not *virtute officii.* They give construction to certain words in statutes, which words are similar to those we are considering, in our statute.

Lord Kenyon, in *Alcock* v. *Andrews,* (2 *Esp. R.* 542,) held, that a constable acting *colore officii,* not *virtute officii,* is not protected by the statute relating to actions not commenced within six months; and in *Postlethwaite* v. *Gibson,* (3 *Esp.* 224,) he held the same, if the constable acted without a warrant at all. The latter of these cases is noticed by the judges in *Parton* v. *Williams;* and one of the judges says : " All that Lord Kenyon could be understood to have said is this, that inasmuch as the defendant had not a warrant, and as he was not acting on his own view, he was not acting in his character of a constable ; and therefore was not entitled to the protection of the act." He adds : " That also was a mere nisi prius decision, and the plaintiff was ultimately nonsuited, so that there was no opportunity of bringing the case before the court." See also what Best, J., said of that case.

We have seen that in *Straight* v. *Garver,* a constable, Ch. J. Abbott directed a verdict for the constable because the venue was not laid in the county where the act was done, though the constable had arrested the plaintiff without warrant. And see

other cases above cited. As we have seen, actions brought against public officers, "for or concerning any act done by such officer, by virtue of his office," must be brought in the county where the fact complained of happened, and not elsewhere. (2 *R. S.* 353, § 14.)

In *W. R. Hull* v. *Southworth,* (5 *Wend.* 265,) the action was trover against a deputy sheriff. The defendant justified under an execution against E. Hull. The property was in the possession of E. Hull. The venue was not in the county where the property was taken by the defendant, and for this reason it was held that the plaintiff could not recover. Is not this case in point? The defendant, upon an execution against E. Hull, took the property of W. R. Hull. True, it was in the possession of E. Hull, and possession is *prima facie* evidence of title. The property, however, was the property of the plaintiff, and the officer was a trespasser. It may be remarked that it was at least difficult to say, from appearances, who was in possession of the property at the time of the levy, in the case under consideration. Robinson, the judgment debtor, had been in possession.

In *Coon* v. *Congden,* (12 *Wend.* 496,) the action was replevin. The defendant was a constable, and had taken the property on an execution against one Williams. It does not appear whether the property was in the possession of Williams. It was held that the defendant could defend under the general issue. Such, I apprehend, has been the general understanding and practice throughout the state, and this, too, whether the officer had a good defense or not. He has been permitted, where he has taken the property of A. upon an execution against B. when sued by A., to plead the general issue and attempt any defense. (*See Johnson* v. *Fellows,* 6 *Hill,* 353.)

Justice Sutherland, in *Elliot* v. *Cronk's Adm'rs,* said that the statute touching venue applies primarily, and, he was inclined to think, exclusively, to those official affirmative acts of public officers by which, in the service of process or otherwise, they may interfere with the property of *third persons, and thereby become liable to an action.* The provision does not apply to *omissions* of duty. (*Hopkins* v. *Haywood,* 13 *Wend.* 265.

*Persons* v. *Parker*, 3 *Barb.* 249.) The statute of limitations of actions to three years applies to acts done, and acts of *omission*. (*Fairchild* v. *Case*, 24 *Wend.* 381.) In *Persons* v. *Parker*, (*supra*,) the statute was not pleaded; and see *Elliot* v. *Cronk*, (*supra*.)

As already remarked, *Morris* v. *Van Voast*, (19 *Wend.* 283,) is the only authority in point, arising upon our limitation act, for doing an act in the officer's official capacity. Justice Nelson is very brief upon the point. He says the defendant was guilty of a trespass; that the act may have been done *colore* but not *virtute officii*, and he cites 2 *Esp.* 540. He refers to the English act limiting actions against certain officers to three months, for any thing done in the execution of their office, and remarks, that the act has been very liberally expounded by the courts, in behalf of the officers named, but that they are not protected when they clearly act without authority, and especially if they must have known it. I have referred to some of the English cases, and shown under what circumstances they have applied the statute, and shown that it has been applied to acts done *colore officii*. In short, that where the officer has assumed to act as an officer, and has acted in good faith, believing that he had authority to do the act, the statute has been applied to the case. Apply the same rule to the present case. There is no pretence that the deputy of the defendant Plumb acted otherwise than in good faith, believing he had a right, under the execution against Robinson, to take the property in question. He assumed to act as a public officer; he had a valid execution. He pursued the steps pointed out for levying upon and selling property. He was a trespasser because he took the property of the plaintiff instead of Robinson, but there is no evidence to show that he acted *mala fide*. It seems to me that the English cases, construing similar language in similar statutes, are authority upon the question of the *construction* of our statute, and they show that the statute of limitations and other statutes, speaking of *acts done* in the execution of their office by public officers, include acts done *colore officii*. Notwithstanding the strength of the English cases, I

should feel it my duty to follow *Morris* v. *Van Voast*, but for the late case of *The People* v. *Schuyler.* · Although that case arose in an action upon the official bond of the sheriff, still the argument in it is, I think, applicable to the present case, and I incline to think decisive. Indeed, Judge Pratt, who wrote an able dissenting opinion, founds his argument mainly upon the position that the precise terms of the condition of the bond " to perform and execute the office of sheriff" ought not to be enlarged by construction, but that a strict construction in favor of sureties should be adopted.

It is quite as clear that the condition of the bond, and the statute pursuant to which it was given, include cases of affirmative acts only, as it is that the statute of limitations, which we are considering, include affirmative *acts done.* It seems to me that Judge Pratt could not make the same objections to construing the statute of limitations so as to include the present case, as he did to the construction of the condition of the bond, so as to make the sureties of the sheriff liable upon their bond for the consequences of a trespass committed by him, in taking the property of A. upon an attachment against B. Considering the statutes that have been brought under revision, and the decisions that have been made upon them, and the case of *The People* v. *Schuyler*, I think we ought to reverse this judgment.

I have not attempted to argue the question, but have examined the statute and cases. But it seeems to me that, although literally the words of the statute may not include this case, it may, upon fair and legitimate principles of construction, be made to include it. And if *The People* v. *Schuyler* was well decided, this statute should be made to include the present case. The three years' limitation was new in the revised statutes, and it was proposed by the revisers accordingly " to relieve the sureties of sheriffs ;" that is, to limit the action against them to three years, when, before that, their liability extended for six years. . The statute says nothing about *sureties*, but limits the action to three years, against sheriffs and constables.

Upon the whole, I am of the opinion that the statute, properly

construed, includes the present case, in the absence of any evidence to show that the deputy of the defendant acted in bad faith, knowing or believing that he had no right to seize the property upon the execution against Robinson. The judgment should be reversed, and a new trial should be had before the same referee, costs to abide the event.

Judgment reversed.

[ERIÉ GENERAL TERM, May 15, 1854. *Marvin, Bowen* and *Greene,* Justices.]