CALANAN *vs.* McCLURE, executor, &c.

The admissions of a party, whether of law or of fact, which have been acted upon by another, are conclusive against the party making them, as between him and the person whose conduct he has influenced. And this, whether the admissions are made in express language to the person himself, or are implied from the open and general conduct of the party.

In the winter or spring of 1861 a creditor presented an account against an estate, to the executor, which was rejected by the latter, on the 15th of March. An offer of a given sum was made, by the attorneys of the executor, to compromise the claim, which was refused by the creditor. In April, another account, embracing some additional items, was presented to the executor, and an offer made by the creditor to settle it for fifty cents on the dollar. The executor then promised to see his attorney, and to let the creditor know what he would do about it. The creditor called upon the executor repeatedly, for his answer, and the usual excuse was that the executor had either forgotten to see his attorney, or that the latter was out of town. At one of the interviews between them, the creditor requested a definite answer, so that if the executor would not pay the account, or agree upon it, he would consent to a reference. Finally, in October, after six months from the first rejection of the account had elapsed, the executor refused to pay the account, or to consent to refer it.

*Held* that the negotiations which were thus kept alive were an admission by the executor that the matter was still open for settlement, and that the first alleged rejection was not considered as final and conclusive, but was waived and abandoned.

*Held, also,* that under these circumstances the claim was not barred by the statute of limitations until six months after its final rejection in October.

While the statute of limitations is a valid defense, yet when it is apparent that neither of the parties considered that it had commenced running, and both acted entirely upon a contrary hypothesis, there should be some hesitation in allowing it to prevail. *Per* MILLER, J.

This rule should especially apply to the short statute of limitations, which, unlike the other, is not a statute of repose, but is highly penal and should be construed strictly.

THE action was brought by the plaintiff to recover an alleged indebtedness of the defendant's testator, Nathaniel Wright, to the firm of Wyman & Livingston, attorneys at law, for professional services rendered, and disbursements made, by them, between January, 1853 and 1860. The account was duly assigned to the plaintiff. The defendant qualified as executor, and advertised for creditors to present

their claims on or before the 15th day of March, 1861.    The account was presented in due season, and the executor declined to pay it, on the 15th day of March, by a letter which was received by the plaintiff.    Subsequently another account was made out and sworn to, containing some items of credit and some additional charges not contained in the original bill. After considerable negotiation between the parties, the circumstances relating to which, as well as other material facts in the case, are stated in the opinion, the payment of this, also, was refused.

The defendant set up in his answer, among other defenses, that of the short statute of limitations.    The cause was referred, and the referee found that the whole claim was barred by the short statute of limitations, by reason of the plaintiff's neglect to commence the suit within six months after the claim was unqualifiedly rejected, the same not having been referred, and therefore, that the plaintiff was not entitled to recover. The plaintiff excepted.    Judgment was duly entered, and the plaintiff appealed.

*L. Tremain,* for the appellant.

*J. McClure,* for the respondent.

*By the Court,* MILLER, J.    I think that the decision of the referee, that the plaintiff's claim was barred by his neglect to commence a suit within six months after it was rejected by the executor, the same not having been referred, was erroneous, and can not be upheld.

Entertaining this opinion, a brief recurrence to the facts bearing upon the question is essential in order justly to appreciate its real character.

The account of the plaintiff was made out and presented to the defendant in the winter or spring of 1861, and on the 15th of March, after it had been thus presented, the defendant's attorneys gave a written notice stating that the defendant

felt obliged to disallow and reject the account, and if the plaintiff would call upon them they would · explain the reasons which had led them to this conclusion.

An offer had. been made by the defendant, of one hundred and sixty dollars, to compromise the claim, which had been refused by the plaintiff. According to the plaintiff's evidence, in the month of April, another bill was made out, and in May following, the defendant was again called upon in reference to the bill, and was informed of the offer of the attorneys to pay one hundred and sixty dollars, and a proposition was made by the plaintiff to settle it for fifty cents on the dollar. The defendant then promised to see one of his attorneys, and to let the plaintiff know what he would do about it. The plaintiff again called upon him, and he told him that he had not seen his said attorney yet. At another time he said that he was at the west. The plaintiff called at least a dozen times, and the usual excuse was that the defendant had either forgotten to see said attorney, or that he was out of town. At one of the early interviews the plaintiff desired a definite answer, so that if the defendant could not pay the account or agree upon it, he would give his consent to a reference. At one time an appointment was made for a meeting at the office of the attorney of the defendant, which was forgotten by both parties, and therefore did not take place. After this appointment, the plaintiff called again on the executor, and he was then told that he could not or would not pay the bill, nor consent to refer. Until this time he gave no decision.

A witness went with the plaintiff, on several occasions, and as he testified, at one time, the defendant said he wanted to see his attorney, who was absent. At another time, he selected a day for a meeting at his attorney's office. His evidence, so far as it goes, tends to corroborate the testimony of the plaintiff as to the important fact that the negotiation was continued from time to time, as if the matter was still open and unsettled.

I do not understand that the defendant's evidence contradicts the plaintiff, in the material and important fact that the negotiation was continued as if the matter had not been finally settled and disposed of. The defendant admits that the plaintiff called upon him, several times, and he thinks that he might have called as many as a dozen times ; that he might have told him, sometimes, when he called, that he had not yet seen his attorney. He recollects the plaintiff's stating that he would take fifty cents on a dollar, and presumes that his reply was that he would see his said attorney, and let him know. He could not say how long a time intervened between the times the plaintiff called the first and second time, and the second and the last call. He does not recollect that he ever told him that he would not pay *any of the bill*, except just before the suit was commenced, and he then informed the plaintiff that he would not pay the bill. His impression is that these conversations, except the first one, were had after his attorney showed him a memorandum, of the second bill, which was presented to the attorney and was rejected on the 24th day of October, 1861.

The defendant also recollects the appointment made to meet at the office of his attorneys, to see about the claim, but does not remember whether it was one or two months before the suit was commenced.

It is apparent from the testimony, that negotiations in regard to the final adjustment of the plaintiff's account were continued from the time of its alleged rejection, in March, 1861, and postponed from one time to another, without any definite arrangement being made about its final settlement, until it was at last absolutely refused and rejected, in the fall of that year.

The negotiations, which were thus kept alive, were an admission that the matter was still open for settlement, and that the first alleged rejection was not considered as final and conclusive, but was waived and abandoned. It would be an exceedingly harsh rule which would allow a party to pursue

a course of conduct which would induce another to sleep upon his rights until a statute of limitations had entirely cut off his claim and barred a recovery of the debt. If the defendant had intended to insist upon the first alleged rejection of the plaintiff's claim, he should have thus stated, at the various interviews which he had with the plaintiff, or at least some of them. It was his duty, I think, to inform the plaintiff, explicitly, whether he meant to reject or dispute it; and in honor and good faith he was bound to disclose to him, if such was the fact, that he relied upon his prior act, and not by delays and promises to see his attorney, to convey a belief that he might finally allow it, and that it was still open for consideration. His conduct and actions were of a character which might very well, without an intention to do so, induce and strengthen an impression in the mind of the plaintiff, that he considered that the claim had not been finally rejected. The admissions of a party, whether of law or of fact, which have been acted upon by others, are conclusive against the party making them, between him and the person whose conduct he has influenced. It is of no importance whether made in express language to the person himself, or implied from the open and general conduct of the party. (1 *Greenl. Ev.* §§ 207, 271, 272. *Hawley* v. *Griswold*, 42 *Barb.* 18, 23.) In the case at bar, it is quite evident that the acts of the defendant were inconsistent with the idea that the claim had been rejected, and they gave countenance and encouragement to the impression, apparently honestly entertained and acted upon by the plaintiff, that his demand was still the subject of amicable arrangement. It was not until the rejection in October—which was entirely unnecessary if there had been one in the preceding month of March—that any thing had occurred to disabuse the mind of the plaintiff of this belief.

If the account had been rejected, where was the occasion for this continued negotiation for a period of several months? Where the necessity of another formal rejection in the month

Calanan *v.* McClure.

of October ?    It was idle and useless to repeat the interviews which were had, if nothing remained to be done; and the fact that they occurred, shows quite conclusively that it was not thus considered by either party.    While the statute of limitations is a valid defense, yet when it is apparent, as in this case, that neither of the parties considered that it had commenced running, and both of them acted entirely upon a contrary hypothesis, there should be some hesitation in allowing it to prevail.

This rule should especially apply to the short statute of limitations, which, unlike the other, is not a statute of repose, but is highly penal, and should be construed strictly. (*Elliot* v. *Cronk's administrators,* 13 *Wend.* 39.    *Kidd* v. *Chapman,* 2 *Barb. Ch.* 422.    *Reynolds* v. *Collins,* 3 *Hill,* 36.)

I think that the defendant is estopped from insisting upon the alleged rejection of the plaintiff's claim on the 15th day of March, 1861.    That even if it can be considered, in any point of view, that it was then rejected, the rejection was waived by the acts and evidence of the defendant subsequently, and that the statute only began to run from the time when the defendant finally rejected the demand, in October following.

It follows, from these views, that the referee erred in his decision; and as a new trial must be granted, by reason of that error, it is not necessary to examine the other questions presented.

Judgment reversed, and new trial granted, with costs to abide the event.

[ALBANY GENERAL TERM, May 7, 1866.    *Miller, Ingalls* and *Hogeboom,* Justices.]