Ingalls, J.
This motion is made upon the ground that the action is against the defendant, Tweed, as a public officer; that the complaint charges him with acts performed by him in that capacity, and that he has therefore an absolute right under the Code to have, such action tried where he resides, and where the above cause of action arose.
This motion involves the determination of a legal right and not a question of discretion. The strictness with which this right of trial, when it exists, has been regarded by the courts, appears by the following adjudications (Birmingham Iron Foundry v. Hatfield, 43 N. Y., 224; Leland v. Hathorn, 42 Id., 547).
There is no distinction, it seems, in this respect, between an action brought in the name of the people and one between individuals (People v. Hayes, 7 How. Pr., 248).
The Code (§ 124) provides as follows: “Actions for the following causes must be tried in the county where the cause, or some part thereof, arose, subject to the like power of the court to change the place of trial in the cases provided by statute. 1st. For the recovery of a penalty or forfeiture imposed by statute, &c. . . . 2nd. Against a public officer or person specially appointed to execute his duties, for an act done by him in virtue of his office; or against a person who, by his command, or in his aid, shall do anything touching the duties of such office.”
In Brown v. Smith (24 Barb., 419), Bacon, J., considering this section of the Code as applicable to public officers, remarks : “The important question in this case is, whether the defendants are. not entitled to the protection of the statute, which requires the suit to- be brought within their own county. And this depends upon the question whether the act, to wit, the assessment of the plaintiff’s lands, was an act done virtute *421 officii or colore officii.” “ Where the act of an officer is of such a nature that his office gave him, no authority to 'do it, he is not protected; but when, in performing an act within the scope of his authority, he commits an error, or even abuses tile confidence which the law reposes in him, he is still entitled to the protection of the statute.” See also Seeley v. Birdsall (15 Johns., 267; Grah. Pr., 2 ed., p. 198). It is insisted by the plaintiff’s counsel that the defendant, Tweed, being out of office, is deprived of the benefit of this provision of the Code. It seems to have been held otherwise under the provisions of the Revised Statutes in regard to venue, and I do not perceive any material difference between the provisions of the Code and the Revised Statutes in regard to place of trial, so far as public officers are concerned.
It would, therefore, seem to follow that the rule established before the Code was adopted should prevail.
In Elliott v. Cronk’s Administrators (13 Wend., 35), Judge Sutherland remarks: “Where the action would be local, as against a sheriff, I am inclined to think it would also be so against his representatives, although they are not expressly named. It is true, that one of the reasons, upon which the provision may have been founded, does not apply to the representatives of the officer, to wit, that his personal presence, within the sphere of his jurisdiction, may be necessary to the public safety or convenience. This consideration, however, can apply but to a small portion of the officers embraced in the terms of the act. The act applies to all public officers, from the trustees and collector of a school district up to the sheriff of a county. The act was intended, undoubtedly, to promote the convenience of public officers, and to protect them against vexatious and harrassing prosecutions for acts done by them in the discharge of their official duties—to save them the inconvenience and expenses of attending with their *422 witnesses at places remote from their respective residences. These considerations apply, in principle, with as much force to representatives of the officer as to the officer himself.”
The case referred to extends the rule quite far enough in this respect to embrace the question presented by this motion.
Indeed, I think it was intended by the legislature to extend this protection to a public officer as well after his term of office had expired as while in. office, for acts done in virtue of such office. It is an immunity conferred on public officers, of which they are not to be deprived the moment their term of office expires. It cannot reasonably be contended but that this cause of action, or at least some part of it, arose in the county of New York.
We are brought to the consideration of the further question whether the defendant, Tweed, held a public office when the alleged cause of action arose.
An office is defined by Booties, in his Law Dictionary, as follows : " An office is a right to exercise a public function or employment,'and to take the fees and emoluments belonging to it.”’ Burrill, in his Law Dictionary, gives.the following definition : “A position or station in which a person is employed to perform certain duties, or by virtue of which he becomes charged with the performance of certain duties, public or private.”
See also “In the Matter of the Oaths to be Taken by Attorneys and Counsellors” (20 Johns., 493). The question in this case was whether attorneys' and counsellors were included within the following provision of the Constitution of the State, then in force : “No other oath, declaration or test, shall be required as a qualification for any office or public trust.” The court held, they were not, in a legal sense, as they‘performed no duties on behalf of the government or executed any public trust.
*423 Judge Platt remarks : “ Lexicographers generally define office to mean public employment, and I apprehend its legal meaning to be an employment on behalf of the government, in any station or public trust, not merely transient, occasional or incidental.”
In the case of Daniel Wood (note to 2 Cow., 30), Chancellor Sandford defines an office thus: “ An office is a public charge or employment, and the term seems to comprehend every charge or employment in which the public are interested ” (See also upon this question, People v. Hayes, 7 How. Pr., 248; see also, People v. Comptroller of the State, 20 Wend., 595). The legislature provided by statute that whenever a site should be obtained for the erection of a State lunatic asylum, it should be the duty of the governor, secretary of state, and comptroller, to appoint three commissioners to contract for the erection of such asylum, and to superintend the building thereof. One of the questions raised was whether the commissioners were to be regarded as public officers. Judge Nelson, at page 59 of the case last cited, remarks : “Assuming, then, that the commissioners are to be regarded as holding an office, which I am inclined to think they should be, within the intent of the legislature, being recognized as such twice in the statute.”
It will be observed that section 4 of the statute of 1870, chapter 382, under which the defendant, Tweed, assumed to act as an auditor and to certify the account, expressly recognizes him and his associates, the mayor and comptroller, as officers. The concluding clause of section 4 is as follows : “ Such claims shall be paid by the comptroller to the party or parties entitled to receive the same, upon the certificate of the officers named herein.” The claims referred to in this section can be regarded. as none other than those which the officers designated were empowered to audit and certify.
See also, Porter v. Pillsbury (11 How. Pr., 240), in *424 which the keeper of the Albany County penitentiary was held to be a public officer. Judge Dean, in his opinion upon the motion to change the place of trial, remarks: “But the motion must be granted on the ground that the defendant is a public officer. He has the charge of a public institution. The position that he holds is, in the act establising the penitentiary (Laws of 1844, chapter 152), denominated “ an ‘ office,’ and the person who fills it is called an ‘ officer.’ ”
The defendant is, therefore, within the reason and language of section 124 of the Code (See also, People v. Bedell, 2 Hill, 196; Coats v. People, 22 N. Y., 245).
The duties which the statutes of 1870, above referred to, devolved upon the defendant, Tweed, were of a public nature, relating to the government of the city of New York.
The statute referred to conferred upon him and his associates a public duty of importance and responsibility, viz : to audit and certify the claims which were to be paid, and expressly inhibiting payment without such certificate. I cannot doubt but that an office was created, and that Tweed and his associates were constituted officers. It is quite apparent from the opinion pronounced at general term, that the court regarded Tweed and his associates as public officers, and he must be held to be a public officer in regard to such trust, and therefore within the provision of section 124 of the Code, and entitled to its benefit; provided the complaint charges acts of misfeasance or malfeasance performed by him as such officer, by virtue of his office. Mere omission of duty is not sufficient (Elliot v. Cronk, 13 Wend., 35; Fairchild v. Case, 24 Id., 381). The defendant, to be entitled to the benefit of the provision of the Code, must be charged with acts done in virtue of his office, and within the scope of his authority, and, if he is so charged, we have seen that even an abuse of the *425 confidence conferred will not deprive him of the benefit of the statute.
The complaint commences by alleging the passage by the legislature of the act of April 27, 1870, before referred to, and then sets out section 4 of said act, which provides, among other things, for the auditing and certifying of certain claims against the city, and for the issue of revenue bonds to raise the money to pay such claims. And providing further that the comptroller should pay the claims to the party or parties entitled to receive the same, upon the certificate of the three officers required by the act to audit the same. It further alleges as follows : “ That at the passage of said act, and at all times since, Abraham Oakey Hall was and is mayor of said city, and William M. Tweed was, and until and including July 4 next thereafter, continued to be president of the board of supervisors of said county.” It further alleges that claims to the amount of six million three hundred and thirty thousand five hundred and forty-one dollars and thirty-seven cents, were in form certified by the said three officers. That, from time to time, as such certificates were made known to the comptroller, he caused the bonds to be issued; that each of said officers subscribed such certificate. The complaint then charges in substance that the claims certified were false, fictitious and fraudulent. And that there was a corrupt, fraudulent and unlawful combination and conspiracy between the said Tweed and others, to divide the money thus procured.
Thus, it appears from the allegations of the complaint, that the fraud charged was perpetrated by and through an observance of the forms which the statute referred to prescribes. Without such audit and certificate, bonds could not be issued or money paid upon the pretended claims.
The complaint is by no means confined to charges *426 against said Tweed of nonfeasance in office, but contains positive charges of misfeasance and malfeasance performed by virtue and within the scope of his authority as an officer, and, therefore, although such acts amount to an abuse of the confidence which the law reposed in him, he is still entitled to the protection of the statute (Brown v. Smith, 24 Barb., 419).
The charges of fraud and misconduct are denied by the answer, and hence constitute a material issue to be tried.
When certain acts are performed by an officer, and in virtue and within the scope of his authority as such officer, he cannot be deprived of the benefit of the venue statute by charges in a pleading that such acts were fraudulent.
We cannot appropriately consider upon this motion any question of convenience or expediency, or whether the public interests will be better subserved by the trial of this action in one county rather than in another.
The motion involves simply a question of legal right, which must be determined regardless of all other considerations. If the place of trial is changed to New York, the residence of the defendant, and where the cause of action, or at least some part of it, arose, the plaintiff will be at liberty to move to change the place of trial to any other county, provided an impartial . trial cannot be obtained in that county, or for the convenience of witnesses.
After giving to this motion all the consideration which its importance demands, I am satisfied that, as matter of law, the defendant is entitled to have the place of trial changed to the county of New York.
An order must be entered to that effect, with ten dollars costs of this motion, to be paid by the plaintiff.