[Civ. No. 14048.   Second Dist., Div. Three.   July 23, 1943.]

W. J. CECIL, as Director of Agriculture, etc., Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY et al., Respondents.

Robert W. Kenny, Attorney General, and Walter L. Bowers, Deputy Attorney General, for Petitioner.

J. H. O'Connor, County Counsel, and S. V. O. Prichard, Assistant County Counsel, for Respondents.

SHINN, Acting P. J.—The Director of Agriculture of the State of California, who is the petitioner in this proceeding in prohibition, seeks to stay further steps in a mandamus proceeding pending against him in the Superior Court of Los Angeles County, upon the ground that his motion for change of venue to the county of his residence (Sacramento) was improperly denied.

It is not questioned that petitioner did reside in the county of Sacramento at the time the proceeding was instituted in the superior court and at the time of his motion for change of venue. It is conceded that he was not entitled to the order he sought if the "cause or some part thereof" which is the basis of the mandamus proceeding arose in Los Angeles County and if that proceeding is one directed against a public officer for an act done by him in virtue of his office. Respondent contends that the mandamus proceeding is such a proceeding and that the cause arose in Los Angeles County. We are obliged to agree with these contentions and to hold that that proceeding is triable in Los Angeles County under section 393 (b) of the Code of Civil Procedure, for this section, if it applies, takes precedence over section 395, Code of Civil Procedure, which requires that the place of trial be changed to the county of defendant's residence in certain other cases.

Arden Farms Company, a corporation, operates a milk plant at 1900 West Slauson Avenue, Los Angeles, and holds a milk distributor's license issued by petitioner as Director of Agriculture of the State of California. The auditor of the Bureau of Marketing Enforcement of the department filed a complaint with the department accusing Arden of purchasing and receiving in Los Angeles County certain quantities of fluid milk, using the same in the manufacture of ice cream and paying the producers therefor lower prices than those which had been established under and in accordance with the provisions of the Agricultural Code, by which complaint and proceedings to be had thereunder it was sought to have revoked the license of Arden as a distributor of fluid milk and to require Arden to do any and all other things which the

Director of Agriculture might deem fitting and proper in accordance with his powers and the provisions of law applicable thereto. After notice to Arden a hearing on the complaint was held in Los Angeles County, evidence was taken before a representative of the department, the matter was submitted, and the Director of Agriculture made an order at his office in Sacramento revoking the license of Arden as a milk distributor, as of a date four weeks after the date of the order.

A further provision of the order was that if Arden should, before the effective date of the revocation, pay to Central Milk Sales Agency, an association of producers from which Arden had made the purchases in question, some $16,000, which represented the total amount of the alleged underpayments as found by the director, Arden would have the right to petition the director to modify or set aside the order. Arden declined to pay the sum and five days before the date when the revocation would have become absolute brought the proceeding in mandate for a retrial of the issues involved in the proceeding before the department and seeking revocation of the order which conditionally revoked its license and an injunction against interference with its business by reason of said order. The grounds upon which the relief was sought are not material to a decision of the question of petitioner's right to a change of venue.

The question before us has not been passed upon by our courts in any of the reported cases. There have been decisions construing the applicable provisions of section 393 of the Code of Civil Procedure, but these tend more strongly toward the contention of respondent than that of appellant.

It is not contended by petitioner that the act of the director in revoking the permit was not an act done by him in virtue of his office. The attorney general does contend, however, that the proceeding in mandamus is not directed against that act but only against threatened future acts, and it is also urged that the cause which Arden is prosecuting in the superior court arose in Sacramento County because the director signed the order there. We regard these positions as untenable.

*McMillan* v. *Richards,* (1858) 9 Cal. 365 [70 Am.Dec. 655], was in mandate to compel the sheriff to issue a deed. In *Bonestell, Richardson & Co.* v. *Curry,* (1908) 153 Cal. 418 [95 P. 887], it was sought to enjoin the secretary of state

and certain other state officers from entering into and carrying out a contract to purchase paper for the state printer's office, which had been awarded by the state officers to a paper company. *State Commission in Lunacy* v. *Welch*, (1908) 154 Cal. 775 [99 P. 181], was a proceeding in mandamus against the Treasurer of San Benito County to compel him to pay moneys into the state treasury. *Bloom* v. *Oroville-Wyandotte Irr. Dist.*, (1939) 34 Cal.App.2d 102 [93 P.2d 164], was in mandamus to require the respondents to pay money on bond obligations of an irrigation district and to levy an assessment in order to raise the money. In the McMillan case the court emphasized that the statute related to "affirmative acts of the officer by which in the execution of process or otherwise he interferes with the property or rights of third persons, and not to mere omissions or neglect of official duty." None of the cases has done more than hold that acts which the officer has failed to do or which he will do unless enjoined therefrom are not acts done within the meaning of the section and which provide the substance of the cause of action. The Bonestell case, *supra*, (153 Cal. 418) upon which petitioner places his principal reliance, did not decide the questions which are before us. In referring to the decision in the McMillan case it was said (p. 420): "This construction contemplates only such affirmative acts of an officer as directly interfere with the personal rights or property of the person complaining, such as wrongful arrest, trespass, conversion, etc. The complaint in the case at bar shows no such case." Most assuredly Arden is prosecuting a cause for redress against interference with its personal rights and property. The Director of Agriculture has gone into the county of Los Angeles, has inquired into alleged violations of law by Arden, and has issued an order which will put an end to Arden's business as a distributor of milk by revoking its license, unless such revocation is avoided by the payment of an additional sum for milk produced, as fixed by the findings of the department. Or we may say that Arden has been assessed some $16,000 because of the manner in which it has conducted its business in the county of Los Angeles, and if it fails to pay that amount, the right to carry on its business in and from the county of Los Angeles will be ended by the revocation of its license. We are not considering a mere general order issued by the Director of Agriculture applicable alike to all milk distributors in the state or to those engaged in certain branches of the industry, but an adjudication relating to

particular practices and transactions of a single milk distributor engaged in business in Los Angeles County and which directly affects its property located in its principal place of business. We think that the act of the director which will thus operate to Arden's detriment is essentially of the type of acts which the courts have had in mind and which they have described as affirmative acts and those which interfere with the property or rights of third persons. Certainly it is the act which has brought Arden to court for redress.

The Bonestell case was not one seeking protection from the effects of an official act directed against the property or rights of the plaintiff. On this point the court said (p. 420): "Moreover, the action is not one against public officers for an act done by them, but is an action against them and certain other persons *solely* to prevent the doing of certain acts by such officers and by the other defendants in the future." (Emphasis added.) The complaint in the Bonestell case, which we have examined, alleged that the defendants had passed a resolution awarding a contract to defendant paper company and were about to enter into a contract and to purchase quantities of paper thereunder. It was these proposed acts which were sought to be enjoined; the mere decision that the contract should go to the successful bidder was not an official act which gave rise to the cause of action and the opinion of the court shows that the attack was considered to be one directed against acts about to be done by the defendants. That is not our case. Here the act of the director is complete and it is self-executing. The proceeding in mandamus is directed against this order and its necessary consequences and not against future threatened acts. Arden's license has been revoked, although conditionally. If the order is annulled, that will end the matter; if it is not annulled, Arden will pay the sum of $16,000 or lose its license. The action is directed against an act that has been done by the director, not against those which he threatens; the director's work has been completed, so far as official action is concerned. If Arden has any redress, it is by action to annul the order. And if the order is for any reason illegal, the illegality is the basis of the cause of action and it is immaterial in what form of action the right is asserted. The cause of action is essentially for the protection of Arden's property, which can only be accomplished by annulment of the order.

It is equally clear that the cause of the action arose in

Los Angeles County and not in Sacramento County. The affidavit filed in the Bonestell case in support of the motion alleged that the cause of action arose in Sacramento County where the official action had been taken, but there was no decision on that point. It is immaterial in our case where the order was signed or that it was filed in the office of the director in Sacramento County. The cause of action arose in Los Angeles County, where it was to be enforced upon the business and property of Arden located therein, that is to say, by the collection there of $16,000 or by closing up Arden's business by revoking its license. Upon this proposition the well reasoned case of *Montana-Dakota Utilities Co.* v. *Public Service Com.*, (1940) 111 Mont. 78 [107 P.2d 533], is directly in point. The statute under consideration was identical in material respects with our own. An order of the Public Service Commission reduced the gas rates charged by plaintiff in Valley and Phillips counties; the order was made in Lewis and Clark County, where the office of the commission was located. Defendant commission moved to transfer the action from Lewis and Clark County to Valley County, upon the ground that the cause or some part thereof arose in that county and that no part of it arose in Lewis and Clark County. In holding that the action should have been transferred, the court said (p. 534) : "It is the operation of the order that the action seeks to enjoin. True, the complaint also seeks to set aside the order, but only because its operation allegedly would injure plaintiff by confiscating its property. The operation of the order will be accomplished, if at all, in Valley and Phillips counties where the order is made applicable. It is our view that the cause of action arose in Valley and Phillips counties and not in Lewis and Clark County." The same question was involved under an identical statute in *State Appeal Board* v. *District Court of Pottawattamie County*, (1938) 225 Iowa 296 [280 N.W. 525], cited in the Montana case. It was held that where an order had been made by the State Appeal Board reducing a budget and levy in Pottawattamie County, the cause of action to annul the order arose in the county where it was to be given effect and not at all in the county where the order was made, namely, at the state capitol, where the members of the board resided and were required by law to reside. In *State ex rel. Florida Dry Cleaning and Laundry Board* v. *Atkinson*, (1938) 136 Fla. 528 [188 So. 834], it was held that the venue of an action

brought to restrain the enforcement of orders of a state agency was in the county where the order was threatened to be enforced and that plaintiffs had the right to institute their suit in the jurisdiction where the orders were alleged to be operating.

The reasoning of these cases is sound and the conclusion is acceptable, in view of the fact that there has been no contrary holding in California. ██ There is no escape from the conclusion that where a citizen is singled out by a state agency and proceedings are instituted against him and result in an order, the effect of which is to deprive him absolutely or conditionally of the right to do business, the proper county for redress under section 393, subd. (b), of the Code of Civil Procedure is the county in which he carries on the business and in which he will be hurt by enforcement of the order. It is where the shaft strikes him, not where it is drawn, that counts. Process for the seizure of property operates when and where it is executed. Surely a cause of action does not arise in the county in which a state officer happens to affix his name to an order which is to become operative in another county.

The order refusing to change the place of trial was correct. The alternative writ of prohibition heretofore issued is discharged and a peremptory writ is denied.

Wood (Parker), J., concurred.

SHAW, J. pro tem.—I dissent. It is contended, in behalf of the respondent court, that the case is ruled by this provision of section 393 of the Code of Civil Procedure: ". . . the county in which the cause, or some part thereof, arose, is the proper county for the trial of the following actions: . . . (b) . . . Against a public officer . . . for an act done by him in virtue of his office. . . ." The petitioner contends, on the other hand, that the following part of section 395 of the same code is the governing provision: "In all other cases, . . . the county in which the defendants, or some of them, reside at the commencement of the action, is the proper county for the trial of the action." All of these provisions are made applicable to mandamus proceedings by section 1109, Code of Civil Procedure. There is no dispute about the fact that petitioner's legal and actual residence is in the county of Sacramento. The answer of our problem depends, therefore, on the nature of the mandamus proceeding. If it was a proceeding

against petitioner "for an act done by him in virtue of his office," and if "the cause, or some part thereof" arose in the county of Los Angeles, that was the proper county; but, failing either of these conditions, the change of venue under the provision of section 395, Code of Civil Procedure, above quoted, should have been granted and a writ of prohibition should issue here.

The petition of Arden for a writ of mandate was doubtless framed with the decisions of the Supreme Court in *Drummey* v. *State Bd. of Funeral Directors*, (1939) 13 Cal.2d 75, 82 [87 P.2d 848]; *Bodinson Mfg. Co.* v. *California Emp. Com.*, (1941) 17 Cal.2d 321, 329 [109 P.2d 935]; and *Laisne* v. *California State Bd. of Optometry*, (1942) 19 Cal.2d 831 [123 P.2d 457], in view, and its purpose was, as a reading of it discloses, to take advantage of the ruling of those cases that mandamus may be used to obtain a review of decisions of administrative boards and officers revoking licenses, and other similar acts, and to compel a reversal of those decisions. Insofar as this purpose is concerned, the proceeding initiated by the petition is one against a public officer for an act done by him in virtue of his office. (*Bonestell Richardson & Co.* v. *Curry*, (1908) 153 Cal. 418, 420 [95 P. 887].) But so viewing it the cause of action is founded on the act of the officer which is attacked and which the attacking party seeks to have reversed; that is, in this case, the order revoking Arden's license. This act was not done in the county of Los Angeles, but in the county of Sacramento, and hence the cause of action against it arose in the latter, not the former, county.

The Arden petition also asks for relief in the nature of an injunction to prevent the director from interfering with its continuing its business. It is said that in this aspect the proceeding is one against him for an act done by virtue of his office, that is, the act of making his order operative and enforcing it in the county of Los Angeles. But the petition was filed before the revocation of Arden's license became effective, and hence this phase of it is prospective only, an effort to prevent future action by the director, and comes in the same category as the effort to enjoin future performance by public officers of a contract illegally awarded by them, which was the subject of decision in *Bonestell, Richardson & Co.* v. *Curry, supra*, (1908) 153 Cal. 418, 420. Of it the court said "the action is not one against public officers for an act done by them, but is an action . . . solely to prevent the doing of certain acts by such officers . . . in the future." On this

point *Montana-Dakota Utilities Co.* v. *Public Service Commission*, (1940) 111 Mont. 78 [107 P.2d 533], and some other out of state cases cited by respondent may express contrary views; but the California case last cited appears to me as a direct holding that the provision of section 393, Code of Civil Procedure, now under consideration does not apply to actions to restrain future acts, though they be but the sequel to acts already done, and it should be followed, in preference to authority elsewhere.

Petitioner's application for a hearing by the Supreme Court was denied September 20, 1943.