STATE of Oklahoma ex rel. STATE BOARD OF EDUCATION, Plaintiff,

v.

The DISTRICT COURT OF BRYAN COUNTY, State of Oklahoma, and Sam Sullivan, Judge of the District Court of Bryan County, State of Oklahoma, Defendants.

No. 37097.

Supreme Court of Oklahoma.

Nov. 22, 1955.

**414**

Mac Q. Williamson, Atty. Gen., James C. Harkin, Asst. Atty. Gen., for plaintiff.

John Allen Phillips II, Durant, for defendants.

BLACKBIRD, Justice.

This original action involves a determination of the proper venue of an action now pending as Cause No. 20114 of the District Court in and for Bryan County, Oklahoma. Plaintiff, hereinafter referred

to as applicant, seeks a writ of prohibition from this Court to prevent said court and its judge (named as defendants, but hereinafter referred to as respondents) from trying said cause on its merits for the reason that the proper venue of such action is not in Bryan County, but in Oklahoma County where the State Capital and the office of the defendants, as members of the State Board of Education, is located.

The purpose of the Bryan County action, as revealed in the petition filed therein, is to declare null and void, as unconstitutional, a portion of the recent amendment to the Oklahoma School Code, enacted as Sec. 37 of House Bill No. 964 of the last, or Twenty-Fifth, session of our State's Legislature, Tit. 70, Chap. A., S.L. 1955, pages 433, 434, 70 O.S.Supp. § 16–20a, and to enjoin defendants, as members of the State Board of Education from acting on, or pursuant to, the provisions of said section.

The plaintiffs in said action are certain school book dealers and sales companies of the City of Durant, in Bryan County, and others of Oklahoma cities outside Bryan County, together with said county's school superintendent and one of its school districts.

For the purpose of determining the only question at issue in this action, it is necessary only to notice the general character of the Bryan County action. Sec. 37, supra, which the plaintiffs are therein seeking to have the Bryan County District Court nullify, makes various changes in the Oklahoma School Code with reference to the procurement of library books for all school districts of the State. Among other things, it provides that not later than November 30th, of each year, the State Board of Education shall "select an official list" of such books, and that publishers wishing the board to consider books for placing on said list, shall furnish said board "a sample copy of each book, stating the price thereof, with guaranty against increase thereof for one (1) year, which shall include cost of delivery to a school district." Said section further provides: "All publishers submitting books for consideration shall agree to keep stocks of their books at a joint depository in Oklahoma in sufficient quantities to supply all immediate demands, where books of different publishers may be packaged and shipped in single orders." Instead of allowing each school district to purchase, using State Aid funds, whatever library books it needs, the new amendment provides that such books shall, upon requisition of the school district, be purchased *for* it by the State Board of Education exclusively from the official list, said books to be charged to the district by the Board by deducting their price, together with the cost of shipping, from said district's share of a "school library account" that the State Board creates by allocating thereto a portion of each district's State Aid funds on a per capita basis, or formula, prescribed in the Act. The Act further provides that any school district's portion of said school library account not used by June 30th, following the allocation, shall be re-allocated to other districts.

The gist of the charges against the Amendment contained in the petition filed in the Bryan County action by plaintiffs, both as book dealers, taxpayers and in their positions relative to the school system of said county, is that it is void and unconstitutional for the following reasons:

(1) Its title is insufficient under Art. V, sec. 56(7) of the Oklahoma Constitution;

(2) It attempts to delegate legislative powers to the State Board and does not provide for judicial review;

(3) It provides no "trade books committee" to protect the public in the selection of "trade books" to go on the official list; it does not prescribe how the joint depository shall be selected; it provides no way for a publisher to ascertain how much freight is to be included in the price of a book he submits for placing on the official list in the event that books of that title are shipped from the depository to the various school districts with other publishers' books on the list; it allows school districts to be charged with a double shipping charge when books are re-shipped from the joint

depository to them; it provides no maximum for the price of such books;

(4) Under the Act, the joint depository will be able to charge publishers an unlimited commission, passed on to the school districts, on books furnished from it to school districts;

(5) Besides destroying the freedom each school district had before passage of the Amendment to select, and use State Aid funds to buy "trade books" best suited to their own individual needs on the "open, competitive market * * * at the lowest possible price, at a consequent saving of taxes", the provisions of the Act referred to enable one person, or group, designated as "the depository" to illegally control and monopolize the sale of all trade books sold to public schools in Oklahoma; they place an unnecessary and illegal burden on the sale of merchandise in interstate commerce; they deprive school districts of property without due process of law; and they will result in the perpetration of fraud upon the public and the squandering of public funds detrimental to the "general welfare" and "public policy" of the state.

■ Principal among the reasons applicant cites for its proposition that the above described suit should have been brought in Oklahoma County, rather than Bryan County, is Tit. 12, O.S.1951 § 133, which provides in part:

"Actions for the following causes must be brought in the county where the cause, or some part thereof arose:

\* \* \* \* \* \*

"Second. An action against a public officer for an act done by him in virtue, or under color, of his office, or for neglect of his official duties."

Respondents do not seriously dispute the applicant board's contention that it, or, each of its members, is a "public officer" within the contemplation of the above statute; and we do not think they could successfully do so, in view of that term's comprehensive meaning. For definitions of "public officer" see City of Tulsa v.

District Ct. of Tulsa Co., 174 Okl. 470, 51 P.2d 511 and Pollack v. Montoya, 55 N.M. 390, 234 P.2d 336. However, they cite the fact that the members of the appellant board reside in different counties of the state and the further fact that the statutes do not specify where their meetings shall be held, in urging upon this Court what they term a broad or "liberal" interpretation of the above quoted statute and Tit. 12, O.S.1951 § 139, to the end that actions against members of the applicant board, besides being brought in Oklahoma County, situs of the State Capitol and seat of the State government, may also be brought in any county in which any of the individual members of the board reside or may be summoned, or in any county of the State, whose citizens, school districts or school officials are affected by the action of the board.

■ Neither of the parties to this action cite any Oklahoma case that is decisive of the question herein presented. All recognize it as one of first impression in this jurisdiction. Apparently, most states have venue statutes which fix, more or less definitely, the forum of actions against public officers. See Eck v. State Tax Comm., 204 Md. 245, 103 A.2d 850, and 40 Cyc. 87, cited therein; see also 67 C.J. 77 et seq., 92 C.J.S., Venue, § 53. The difficulty with, and divergence of opinion on, the problem seems to arise not so much from determining who are officers, "public" officers, or "state" officers, State ex rel. Milwaukee Medical College v. Chittenden, 127 Wis. 468, 107 N.W. 500, within the meaning of the different state statutes as variously worded, but apparently stems from determining in what county the cause of action, or some part thereof, arises. See, for instance, Cecil v. Superior Ct. In and For Los Angeles Co., 59 Cal.App.2d 793, 140 P.2d 125; Montana-Dakota Utilities Co. v. Public Service Comm., 111 Mont. 78, 107 P.2d 533; State Appeal Board v. District Ct., 225 Iowa 296, 280 N.W. 525; and cases cited in the note at Ann.Cas.1912C, 345. The history of our particular statute, Tit. 12, O.S. § 133, supra, shows that, in its original form (Oklahoma Statutes of 1893), it was iden-

tical in wording with the Kansas statute. See Section 4127 of General Statutes (Kan.) 1889, Vol. 2, Ann., which is the same as sec. 48 of Kansas Civil Code. It is very likely that our statute was copied from that Code, and, as far as the question here presented is concerned, it has undergone no significant change or amendment since. For these reasons the decisions of the highest court of that sister State, where pertinent, should be persuasive on said question. Under them, as well as the decisions of some of the other states having similar statutes, we think the venue of an action like cause No. 20114, against public officers, such as the State Board of Education, for actions done or threatened to be done "in virtue, or under color" of their office, is in Oklahoma County where their office is located at the State Capitol and seat of the state government. See Huerter v. Hassig, 175 Kan. 781, 267 P.2d 532, and the cases therein cited; Gresty v. Darby, 146 Kan. 63, 68 P.2d 649; City of Coffeyville v. Wells, 137 Kan. 384, 20 P.2d 477; State Appeal Board v. District Ct. Pottawattamie Co., 225 Iowa 396, 280 N.W. 525; State ex rel. Starkey v. District Ct., 206 Minn. 54, 287 N.W. 601; Meeker v. Scudder, 108 Ohio St. 423, 140 N.E. 627. In the first cited case, the court quoted from the early Kansas case of Clay v. Hoysradt, 1871, 8 Kan. 74, 80, as follows:

> " ' "The language of this section is plain, and needs no comment from us. By its proceedings against public officers for official acts are referred to the courts of the county where the acts are done. It is an expression of the purpose of the Legislature *to localize suits against officers*. It relieves them from the necessity of deciding between the conflicting orders of courts of different counties. They are amenable only to the courts of the county in which *they are acting.*" ' [State ex rel. Caster v. Flannelly] 96 Kan. [372] at page 380, 381, 152 P. [22] at page 25. (Our italics.)" [175 Kan. 781, 267 P.2d 535.]

And we do not think that for the purpose of determining the venue of the action here involved, the official acts of the State Board of Education can be divorced from, or be considered as being performed in a county other than, the one in which its office is located, though, as hereinbefore indicated it seems to be conceded that there is no statute requiring said board's meetings to be held in that county. One reason for such statutes, other than relieving public officers "from the necessity of deciding between the conflicting orders of courts of different counties" is that it obviates the longer absences of public officers from their official place of business or duty, and the neglect or hampering of that duty which traveling to distant counties to defend litigation, with or without merit, would necessitate. In this connection see Holyfield v. State, 194 Miss. 91, 10 So.2d 841, and the cases cited in the note in Ann.Cas.1912C, supra.

A part of respondents' argument that the "official residence" of the State Board of Education is not at the State Capital in Oklahoma City, Oklahoma County, consists of pointing out that its members are not among the executive officers who, Art. VI, sec. 1 of our Constitution provides, shall keep their offices and records "at the seat of government * * *." They recognize, however, that the Superintendent of Public Instruction is one of the officers specifically included in that provision. They also recognize that when that constitutional provision was adopted there was no State Board of Education, and that said Board was not created until 1943. In this connection, it must also be recognized that the above cited constitutional provision did not purport to limit the officers, who should keep their offices and records "at the seat of government" to those specifically named therein, because, after naming said officers, it contains the significant phrase: "and other officers provided by law * * *." Respondents do recognize that the Oklahoma School Code, as now in force, makes the State Superintendent of Public Instruction the executive officer of the Board, Tit. 70, O.S.1951 § 2A–4, enacted in 1949. They do not mention, however, that it also makes him a member and President of said

Board, Tit. 70, O.S.1951 § 2A–1, and that sec. 2B–2 of said title provides that he shall have an office "at the seat of government, where he shall keep all books and papers pertaining to his office * * *" and " * * * file and carefully preserve * * * all official reports made to him."

After considering the constitutional provision, supra, together with all statutory provisions that have any bearing on the matter, including Tit. 70, O.S.1951 § 2A–4, par. 18, which specifically refers to "the office of said Board" and sec. 2A–2 authorizing the (State Superintendent as) President of said Board to call special meetings, we can only conclude, and we think it is a matter of common knowledge, that said office is in the State Capitol, just as is the office of its President. We also think this is determinative of the question of, in what county is the official residence of the State Board of Education. In this connection, see Leonard v. Henry, 187 Ark. 75, 58 S.W.2d 430, 431; City of Coffeyville v. Wells, supra.

We now come to the question upon which we have indicated there is not complete harmony in the decisions of the various State courts, namely: In an action against a public officer, in what county, under Tit. 12, sec. 133, supra, does "the cause, or some part thereof" arise? We think the proper decision of this question in any given case depends considerably upon its particular facts and character. Respondents say that a liberal construction of said statute authorizes the "division" of a cause of action into parts, so that venue may lie in many counties with the result that exclusive jurisdiction is in the District Court of the county where the first action on said cause is filed. They anticipate that the State Board will take action which they say is authorized under the allegedly unconstitutional sec. 37, supra, that will deprive the Bryan County School District named as one of the plaintiffs in cause No. 20114, supra (and inferentially other school districts in said county), of library book funds, and prevent it from buying such books from local stores and dealers. Then they ask: the question: Do not such acts of the State

Board, in compliance with such a law, give rise to a cause of action in Bryan County? Here, again, we think we should follow the Kansas decisions. In view of what we have already said concerning the office and official residence, or principal place of business, of the State Board of Education, we think that its official acts, under sec. 37, supra, with which plaintiffs are assertedly concerned, must be regarded as being performed at the State Capital in Oklahoma City, from which situs the results thereof must emanate. In City of Coffeyville v. Wells, supra, an action was brought in the District Court of Montgomery County, Kansas, to restrain Wells, the Kansas State Oil Inspector, whose office was at said State's Capital in Shawnee County, from collecting or attempting to collect that State's motor-vehicle fuel tax on gasoline purchased by the plaintiff city. There, on appeal from the lower court's dismissal of the action, the Kansas Supreme Court, after pointing out certain things that the law required said inspector to do, and to be done, at his office in the State Capitol in connection with collection of the tax involved, quoted from State ex rel. Caster v. Flannelly, supra, in part, as follows:

"A state officer acting under the law at the capital, may perform an act which some individual somewhere in the state believes invades his rights or does him a wrong. * * * invasion by an act wholly performed in another county does not give the aggrieved party the right to sue outside the county where the act was done. The action in the district court stands just the same as if the receivers [appellants or plaintiffs] were attempting to contest the validity of an act of the Legislature, and were seeking to enjoin the Attorney General or the auditor of state, or the tax commission, or the state board of health, from proceeding thereunder." [137 Kan. 384, 20 P.2d 478.]

As regards venue, we see no distinction, on principle, between the acts of the Kansas State Oil Inspector that were sought to be enjoined in the Montgomery County,

Kansas, action dealt with in the above quoted case, and the acts of the State Board of Education that are sought to be enjoined in the Bryan County action here involved.

On the basis of the considerations herein noted, it is our opinion that the writ of prohibition, applied for herein, should be granted. It is so ordered.