[No. D049205. Fourth Dist., Div. One. May 10, 2007.]

CALIFORNIA STATE PARKS FOUNDATION et al., Petitioners, v. THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent; FOOTHILL/EASTERN TRANSPORTATION CORRIDOR AGENCY et al., Real Parties in Interest.

828

COUNSEL

Shute, Mihaly & Weinberger, William J. White and Kevin P. Bundy for all Petitioners.

Bill Lockyer and Edmund G. Brown, Jr., Attorneys General, Tom Greene, Chief Assistant Attorney General, Theodora Berger, Assistant Attorney General, Brian Hembacher, Gary E. Tavetian, Olivia W. Karlin and Helen G. Arens, Deputy Attorneys General, for Petitioner The People of the State of California.

Joel R. Reynolds and James Birkelund for Petitioner Natural Resources Defense Council.

Michael D. Fitts for Petitioner Endangered Habitats League.

No appearance for Respondent.

Nossaman, Guthner, Knox and Elliott, Robert D. Thornton, John J. Flynn III and Scott N. Yamaguchi for Real Parties in Interest.

OPINION

**NARES, Acting P. J.**—In an action brought in San Diego County by the People of the State of California and several public interest groups challenging the certification of an environmental impact report (EIR) for, and the decision approving construction of, a toll road that would traverse portions of both San Diego and Orange Counties, made by the Orange County-based Foothill/Eastern Transportation Corridor Agency and its board of directors (together the FTCA), we are presented with the following issue: Does Code of Civil Procedure[1] section 393, subdivision (b) (hereafter section 393(b)), which allows suits challenging actions taken by public officials to be filed in the county where some or all of the cause of action arises, apply to cases such as this that seek to vindicate public rights, or, as the FTCA contends and the trial court found, only those involving personal rights or property? We conclude, after analyzing the text of section 393(b), case law interpreting that statute, and public policy considerations, that this action to vindicate public rights was properly filed in San Diego County because section 393(b) is not limited to actions involving personal rights or property. We therefore grant

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise specified.

the petition for writ of mandate and order that the court set aside its order transferring venue to Orange County.

## FACTUAL AND PROCEDURAL BACKGROUND

This action, brought by California State Parks Foundation, Endangered Habitats League, Laguna Greenbelt, Inc., Natural Resources Defense Council, Sea and Sage Audubon Society, Sierra Club, Surfrider Foundation, the People of the State of California and the State Parks and Recreation Commission (collectively, petitioners), challenges the FTCA's decision to certify an EIR for, and approve construction of, a six-lane toll road (the Toll Road) that would run through both Orange County and the northern reaches of San Diego County, including San Onofre State Beach (San Onofre). Petitioners allege San Onofre is one of California's most visited state parks and includes both a world famous surfing beach named Trestles and a campground that provides recreation for over 100,000 campers per year. According to petitioners, the Cristianitos subunit of San Onofre provides valuable and rare upland and wetland habitats, including unique habitat for 11 species of animals listed as threatened or endangered under federal laws, including steelhead trout, arroyo toad, California gnatcatcher, least Bell's vireo, southwestern willow flycatcher, Riverside fairy shrimp, San Diego fairy shrimp, snowy plover, Pacific pocket mouse, and tidewater goby. San Onofre also contains nationally recognized historic and archeological sites. Petitioners allege that the Toll Road's impacts on the area will be severe, traversing four miles of the Cristianitos subunit of San Onofre within 200 feet of one of the park's campgrounds, which receives over 100,000 campers a year, removing 300 acres of San Onofre parkland, and fragmenting the remainder. They allege that if the Toll Road is built, the campground must be abandoned, as well the entire Cristianitos subunit, which represents almost 60 percent of the park's land.

Petitioners allege that the FTCA's adoption of the Toll Road project violates the California Environmental Quality Act (CEQA) (Pub. Resources Code, § 21050 et seq.) because the EIR it adopted failed to fully (1) evaluate impacts to San Onofre's natural, historic, cultural, visual, and recreational resources; (2) consider reasonable alternative routes that would have avoided these impacts; (3) consider and adopt appropriate mitigation measures; and (3) provide substantial evidence in support of the decision.

In March 2006 petitioners filed two separate petitions for writ of mandate (petitions) against the FTCA in the North County Division of the Superior Court of San Diego County. The petitions alleged that venue was proper in San Diego County as the causes of action arose in part in San Diego County because "[a] substantial portion of the [Toll Road] lies within the County of

San Diego, including the entirety of that portion of the [Toll Road] that would run through [San Onofre]. Many of the significant environmental impacts of the [Toll Road] that are the subject of this lawsuit would occur in San Diego County, and the [Toll Road] would impact state park property interests in San Diego County." More specifically, petitioners alleged that "while the alleged purpose of the Toll Road Project is to provide traffic benefits to southern Orange County, some of the most significant impacts of the Project would occur in San Diego County to resources that have been set aside for the benefit of all the people of the State." The Toll Road is described as "unprecedented in that it would be the first time in California that an agency comprised entirely of local governments would take designated State Park lands for its own highway purposes."

In April 2006 the FTCA moved to transfer venue of the action to Orange County. The FTCA argued that venue was not proper in San Diego County because (1) the FTCA is not located in that county; (2) section 393(b) did not apply as the petitions did not involve an interference with personal rights or property; and (3) section 392, subdivision (a) was not applicable because the petitions did not seek to litigate any interest in real property or injury thereto.

Petitioners opposed the motion, arguing that venue was proper in San Diego County under section 393(b) because (1) some part of the cause of action "arose" in San Diego County; (2) the FTCA is a "public officer"; (3) the FTCA's approval of the Toll Road is an "[a]ct [d]one" within the meaning of section 393(b); (4) section 393(b) is not limited to actions involving an interference with personal rights or property; and (5) because the action sought to prevent injury to real property in San Diego, it was properly filed in that county.

The court granted the motion to transfer venue, finding that section 393(b) did not apply, and the general venue provisions of section 395 did, requiring the action to be filed in the county where one of more of the defendants reside.

This petition for writ of mandate followed.

## DISCUSSION

### I. *Principles of Statutory Interpretation*

█ "In interpreting a statute where the language is clear, courts must follow its plain meaning. [Citation.] However, if the statutory language permits more than one reasonable interpretation, courts may consider various extrinsic aids, including the purpose of the statute, the evils to be remedied,

the legislative history, public policy, and the statutory scheme encompassing the statute. [Citation.] In the end, we ' "must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences." ' " (*Torres v. Parkhouse Tire Service, Inc.* (2001) 26 Cal.4th 995, 1003 [111 Cal.Rptr.2d 564, 30 P.3d 57]; see also *Harris v. Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1165–1166 [278 Cal.Rptr. 614, 805 P.2d 873].)

## II. *General Concepts of Venue*

■ "The term 'venue' denotes the particular county within the state where a case is to be heard. [Citations.] Which county constitutes the *proper* venue in a particular case is determined according to the venue statutes—section 392 et seq. In applying these statutes to determine the county (or counties) where venue is proper, the courts generally look to the main relief sought, as determined from the complaint as it stands at the time of the motion for change of venue. [Citation.] Generally (but with numerous exceptions), when the main relief sought in a case does not relate to rights in real property, 'the superior court in the county where the defendants or some of them reside at the commencement of the action is the proper court for the trial of the action.' (§ 395, subd. (a).)" (*K.R.L. Partnership v. Superior Court* (2004) 120 Cal.App.4th 490, 496–497 [15 Cal.Rptr.3d 517].)

"Where a defendant has made a proper showing of nonresidence, the burden is on the plaintiff to show that the case comes clearly within one of the statutory exceptions to the general rule that actions are triable in the place of the defendant's residence." (*Archer v. Superior Court* (1962) 202 Cal.App.2d 417, 420 [21 Cal.Rptr. 48].)

## III. *Analysis*

### A. *Section 393(b)*

Section 393(b) provides an exception to the ordinary venue provisions as to actions against "public officers": "Subject to the power of the court to transfer actions and proceedings as provided in this title, *the county in which the cause, or some part of the cause, arose, is the proper county for the trial of the following actions*: [¶] . . . [¶] (b) *Against a public officer or person especially appointed to execute the duties of a public officer, for an act done by the officer* or person in virtue of the office, or against a person who, by the officer's command or in the officer's aid, does anything touching the duties of the officer." (Italics added.)

■ The FTCA does not contest that a mandamus action such as this is covered by section 393(b), or that the FTCA is a "public officer" within the meaning of the statute. Section 393(b) covers writ proceedings against state officials and agencies, e.g., mandamus, prohibition or injunction. (*Tharp v. Superior Court* (1982) 32 Cal.3d 496, 502–503 [186 Cal.Rptr. 335, 651 P.2d 1141].)

■ Additionally, in this case the cause of action, or part of it, arose in San Diego County. The cause of action "arises" wherever the plaintiff would be injured by the state action complained of: "A cause arises in the county where the effects of the administrative action are felt, not where the agency signs the challenged order or takes the challenged action." (*Lipari v. Department of Motor Vehicles* (1993) 16 Cal.App.4th 667, 670, fn. 2 [20 Cal.Rptr.2d 246].) " 'It is where the shaft strikes [the plaintiff], not where it is drawn, that counts.' [Citation.]" (*Regents of University of California v. Superior Court* (1970) 3 Cal.3d 529, 542 [91 Cal.Rptr. 57, 476 P.2d 457] (*Regents*).) The challenged action by the FTCA, approving an EIR and the Toll Road project, will, according to the allegations of petitioners' complaint, have a direct and substantial impact on an area of San Diego County that it will traverse, most notably where it passes through San Onofre.[2]

■ Finally, the FTCA concedes for the purpose of this petition that its approval of the EIR and Toll Road project is an "act done" within the meaning of section 393(b). Petitioners' complaint does not allege a failure to act, or threatened future action, but rather an affirmative act taken by the FTCA. Thus, it falls within the terms of section 393(b). (*Harris v. Alcoholic Bev. etc. Appeals Bd.* (1961) 197 Cal.App.2d 759, 768 [18 Cal.Rptr. 151] (*Harris*) [§ 393(b) [at that time § 393, subd. (1)(b)] applies "to acts done as distinguished from acts threatened"].)

■ Thus, a review of the language of section 393(b) demonstrates that it applies to this action. There is no language in the statute that, expressly or impliedly, limits its purview to actions seeking to vindicate private, as opposed to public, rights. ■ Because the language of the statute is clear, we need not resort to any secondary sources to aid in our interpretation: "In determining intent, we look first to the words of the statute, giving the language its usual, ordinary meaning. If there is no ambiguity in the language, we presume the Legislature meant what it said, and the plain

---

[2] The FTCA argues briefly, and without authority, that the cause of action arose in Orange County because the claimed injury is the inadequate EIR, which was approved in Orange County, not the alleged environmental impacts in San Diego County. However, as case law uniformly provides, when plaintiffs are challenging an official act, the cause of action arises where the effects of that act are felt, not where the decision was made. (*Regents, supra,* 3 Cal.3d at p. 542.)

meaning of the statute governs. [Citation.]" (*Hunt v. Superior Court* (1999) 21 Cal.4th 984, 1000 [90 Cal.Rptr.2d 236, 987 P.2d 705].) "Only when the language of the statute is susceptible to more than one reasonable construction is it appropriate to turn to extrinsic aids . . . to ascertain its meaning." (*Diamond Multimedia Systems, Inc. v. Superior Court* (1999) 19 Cal.4th 1036, 1055 [80 Cal.Rptr.2d 828, 968 P.2d 539].)

█ Despite the clear language of section 393(b), the FTCA argues that it does not apply to actions such as this that seek to vindicate public, as opposed to private, rights. In doing so, the FTCA relies on cases interpreting section 393(b), that it claims hold that such a limitation on the scope of section 393(b) exists. However, " '[t]his court is limited to interpreting the statute, and *such interpretation must be based on the language used*. By the express provisions of section 1858 of the Code of Civil Procedure, "In the construction of a statute . . . the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, *not to insert what has been omitted or to omit what has been inserted* . . . [.]" It is elementary that *there can be no intent in a statute not expressed in its words; that the intention of the legislature must be determined from the language of the statute.* [Citations.] . . . "It is a cardinal rule in the construction of statutes that the intent of the legislator should be followed, but this is subject to the imperative and paramount rule that *the court cannot depart from the meaning of language which is free from ambiguity*, although the consequence would be to defeat the object of the act." ' [Citations.]" (*Anderson v. I.M. Jameson Corp.* (1936) 7 Cal.2d 60, 67–68 [59 P.2d 962], italics added.)

Thus, we cannot add the qualification the FTCA proposes, that section 393(b) applies only to actions seeking to enforce private rights, based upon language in cases interpreting section 393(b), because the statute's language itself contains no such limitation, express or implied.

Moreover, as we shall now discuss in detail, case law interpreting section 393(b) (and its predecessor statute) does not support this position, and at most involves imprecise or overly broad language unnecessary to their holdings. In fact, section 393(b) *has* been held applicable to actions seeking to vindicate public rights. Further, no action seeking to vindicate public rights has ever been held not to be within section 393(b) merely because of the public nature of the action. Indeed, the language that the FTCA relies upon in several cases that it argues shows an implied limitation in section 393(b) to actions involving private rights or property involved a very different issue: whether the complaint alleged *an affirmative act* by a public official, as opposed to a mere *omission or threatened future action.*

B. *Case Law Interpreting Section 393(b)*

The FTCA's contention that section 393(b) does not apply to actions seeking to vindicate public rights begins with its reliance on *McMillan v. Richards* (1858) 9 Cal. 365 (*McMillan*), interpreting the predecessor to section 393(b). In that case, which involved a dispute over ownership of a plot of land in Marin County, the plaintiff brought a mandamus action in San Francisco, the plaintiff's residence, to compel execution of a sheriff's deed. The defendant sheriff of Marin County, citing the predecessor to section 393—former section 19, subdivision (2) of the California Civil Practice Act—sought to transfer the action to Marin County because (1) it was an action against a public officer, and (2) Marin County was the county in which the action arose. (*McMillan, supra,* 9 Cal. at p. 403.) The Plaintiff argued that the statute was inapplicable, stating, "This is not an action brought for 'an act done' by the defendant as sheriff, but to compel him to do an act ⁞ . . . ." (*Ibid.*)

The California Supreme Court agreed, holding the statute only applied to cases that challenged affirmative acts: "The second subdivision of section nineteenth [of the California Civil Practice Act], which provides that actions against a public officer for *acts done* by him in virtue of his office, shall be tried in the county where the cause or some part thereof arose, applies only to *affirmative acts* of the officer, by which, in the execution of process, or otherwise, *he interferes with the property or rights of third persons, and not to mere omissions or neglect of official duty.*" (*McMillan, supra,* 9 Cal. at pp. 420–421, first italics in original.)

In support of its position that section 393(b) does not apply to actions seeking to vindicate public rights, the FTCA points to the language from the foregoing quote that states section 393(b) is limited to "affirmative acts" by a public official whereby he or she "interferes with the property or rights of third persons." However, that statement merely gave an example of what constitutes an *affirmative act.* It did not in any way, express or implied, state a rule that only actions to enforce *private* rights are covered by section 393(b). Indeed, the distinction between public and private rights was not raised by any party to the litigation and was not at issue in the Supreme Court's holding.

The FTCA then argues that the *McMillan* case involved only public, not private, rights. This contention is unavailing. In *McMillan* the plaintiff sought to compel a public officer to execute a deed to private property. Thus, the action sought to vindicate purely private rights.

In concluding that the predecessor to section 393(b) applied only to "affirmative acts," *McMillan* relied on two New York cases, construing a

virtually identical venue provision, *Elliot v. Cronk's Adm'rs* (N.Y. 1834) 13 Wend. 35 (*Elliot*) and *Hopkins v. Haywood* (N.Y. 1835) 13 Wend. 265 (*Hopkins*).[3] (*McMillan, supra*, 9 Cal. at p. 421.) *Elliot* was a suit to compel a sheriff's estate to pay the plaintiff a money judgment collected by the sheriff and owed to the plaintiff. In holding that the venue provision did not apply to that action, the New York court stated: "That [venue] provision applies . . . exclusively to those official *affirmative* acts of public officers, by which, in the service of process or otherwise, *they may interfere with the property or rights of third persons, and thereby become liable to an action.*" (*Elliot, supra*, 13 Wend. at p. 37, italics added.) *Hopkins* similarly involved an action to compel a constable to return an execution payment owed to the plaintiff. The court there, citing *Elliot*, also found the venue provision inapplicable, stating: "This provision we have held to be applicable only to *affirmative acts*, and not to *mere omissions* to discharge an official duty." (*Hopkins, supra*, 13 Wend. at p. 266, italics added.)

Of particular relevance to this case, is a later case decided by New York's highest court, interpreting that same venue provision. In *The People agt. Hayes and others* (N.Y. 1852) 7 How.Pr. 248, the New York Attorney General filed an action on behalf of the people of that state against state-appointed road commissioners for alleged statutory violations in laying out a road between two counties, alleging that the road was "on a route wholly unsuitable." (*Id.* at p. 249.) The defendants sought to transfer the case to one of the counties through which the road would run. After holding that the road commissioners were "public officers" for purposes of the venue statute, and concluding that the complaint alleged their wrongdoing at least in part occurred in the other county, the court considered the issue of whether the venue statute applied "in a suit by the people." (*Id.* at p. 250.) The court concluded that it did. (*Ibid.*)

This holding was repeated in a civil case brought on behalf of the people of New York State against the notorious Boss Tweed. In *People v. Tweed* (N.Y. 1872) 13 Abb.Pr. (n.s.) 419, the court, after concluding that there was "no distinction" under the venue statute "between an action brought in the name of the people and one between individuals," held that it applied to cases brought on behalf of the people, i.e., those seeking to vindicate public rights. (*Id.* at p. 420.)

These New York cases provide persuasive authority section 393(b) applies to actions seeking to vindicate public rights. Interpreting a similar venue provision, and using language later adopted by the California Supreme Court

---

[3] Petitioners have requested that we take judicial notice of the New York venue statute and New York case law. We grant the request for judicial notice.

in *McMillan,* the New York courts determined the venue statute did apply to actions seeking to vindicate public rights.

The FTCA also relies on *Bonestell, Richardson & Co. v. Curry* (1908) 153 Cal. 418 [95 P. 887] (*Bonestell*), wherein the plaintiffs filed suit in San Francisco against the Secretary of State, an assistant attorney general, and the state printer of the State of California, as well as a San Francisco firm to which a contract for the furnishing of paper for use in the state printer's office had been awarded by the government defendants in their official capacities. The complaint sought to enjoin further action in regard to or under said contract, upon the ground the contract was illegal and void. The official acts of the government defendants were performed in the County of Sacramento. (*Id.* at p. 419.)

The government defendants moved for a change of venue pursuant to section 393, former subdivision (2) (now, subd. (b)). (*Bonestell, supra,* 153 Cal. at p. 419.) The trial court denied the motion, and, on appeal, the Supreme Court held the statute was inapplicable. (*Ibid.*) It expanded on the language in *McMillan,* stating that this venue statute "contemplates only such *affirmative acts of an officer as directly interfere with the personal rights or property of the person complaining,* such as wrongful arrest, trespass, conversion, etc. The complaint in the case at bar shows no such case. Moreover, the action is not one against public officers for an act done by them, but is an action against them and certain other persons solely to prevent the doing of certain acts by such officers and by the other defendants in the future." (*Id.* at p. 420, italics added.)

The broad language of that statement is what the FTCA focuses on in arguing that section 393(b) applies only to actions enforcing private rights, specifically the reference to "personal" rights or property. It is unclear where the word "personal" came from. In making that statement, the court in *Bonestell* cited the above quoted language from *McMillan,* which did not contain the word "personal." (*Bonestell, supra,* 153 Cal. at p. 420.) This indicates perhaps an inexact translation of *McMillan*'s holding.

As one commentator has noted, *Bonestell* only held section 393(b) was inapplicable because "the suit was not based on acts done, but merely sought to prevent the doing of future acts." (3 Witkin, Cal. Procedure (4th ed. 1996) Actions, § 787, p. 971.) In fact, Witkin has interpreted section 393(b) as having been "narrowly construed to apply only to *affirmative acts,* not omissions or neglect, and *acts done,* not contemplated future acts." (3 Witkin, *supra,* § 786, p. 971, citing *Bonestell, supra,* 153 Cal. at p. 420.) Witkin recognizes no limitation in section 393(b) to actions seeking to enforce private rights.

If *Bonestell* created any new rule, it was that this venue statute not only did not apply to an alleged failure to act, but also to threatened *future* acts, an issue not present in *McMillan*. The Court of Appeal in *Cecil v. Superior Court* (1943) 59 Cal.App.2d 793, 797 [140 P.2d 125] (*Cecil*) explained the *Bonestell* holding: "The complaint in the *Bonestell* case, which we have examined, alleged that the defendants had passed a resolution awarding a contract to defendant paper company and were *about to* enter into a contract and to purchase quantities of paper thereunder. It was these *proposed* acts which were sought to be enjoined; the mere decision that the contract should go to the successful bidder was not an official act which gave rise to the cause of action and the opinion of the court shows that the attack was considered to be one directed against acts *about to be done* by the defendants." (Italics added.)

To the extent the language of *Bonestell* could be interpreted as stating that actions under section 393(b) are limited to those seeking to vindicate private rights, it does not affect our holding. "The holding of a decision is limited by the facts of the case being decided, notwithstanding the use of overly broad language by the court in stating the issue before it or its holding or in its reasoning." (*McGee v. Superior Court* (1985) 176 Cal.App.3d 221, 226 [221 Cal.Rptr. 421].) Because the distinction between private and public rights was not at issue, the holding in *Bonestell* is limited to the conclusion that section 393(b) does not apply to threatened future actions.

The FTCA also cites *State Commission in Lunacy v. Welch* (1908) 154 Cal. 775 [99 P. 181], a mandamus action to compel the county treasurer to pay a certain amount of money to the State Treasurer. Again, the action fell outside section 393(b), not because it involved an action seeking to vindicate public rights, but because that section " 'applies only to affirmative acts of the officer, by which, in the execution of process, or otherwise, he interferes with the property or rights of third persons, and not to mere omissions or neglect of official duty.' [Citation.]" (*Welch, supra*, 154 Cal. at p. 777.) While that action involved public rights, as opposed to mere private ones, the California Supreme Court in no manner indicated that was the basis for denying application of section 393(b). Rather, section 393(b) was held inapplicable because it challenged an official's failure to act, as opposed to an affirmative action. (*Welch, supra*, 154 Cal. at p. 777.)

The FTCA relies on *Harris, supra*, 197 Cal.App.2d 759, in which the Department of Alcoholic Beverage Control (department) denied an application for an on-sale beer license. The applicants appealed to the Alcoholic Beverage Control Appeals Board (appeals board). The department contended the applicants' appeal to the appeals board was untimely. The department filed a petition in the Superior Court for the City and County of San Francisco seeking a writ of prohibition against the appeals board, to preclude

the appeals board from proceeding with the applicants' appeal. The department obtained issuance of a writ of prohibition against the appeals board alone. Thereafter, the appeals board unsuccessfully moved for a change of venue to Sacramento. (*Id.* at p. 761.)

The Court of Appeal affirmed the order denying the motion for a change of venue. (*Harris, supra*, 197 Cal.App.2d at p. 771.) It held section 393(b) "is not applicable here. It has been narrowly construed to apply only to *affirmative acts which directly interfere with the personal rights or property of the person complaining, to acts done as distinguished from acts threatened.* [Citations.] In the present proceeding the department seeks a writ of prohibition to restrain the appeals board *from taking further action* in connection with the appeal of the [applicants], or, from another point of view, seeks a writ of mandate enforcing dismissal of the appeal. Considered under either aspect, the proceeding does not fall within section 393. [Citation.]" (*Harris, supra*, 197 Cal.App.2d at p. 768, italics added.) Thus, again, section 393(b) was held inapplicable because that action sought to enjoin a future action, not one already taken. There was no discussion of a distinction between actions seeking to vindicate public versus private rights.

The FTCA also cites *Cecil, supra*, 59 Cal.App.2d 793, wherein the Director of Agriculture issued an order of conditional revocation of a Los Angeles milk distributor's license for alleged violations of law. The distributor brought a mandamus proceeding in Los Angeles against the director to compel revocation of the order and to enjoin interference with its business under the order. The defendant sought to move venue to Sacramento, the place of his residence. The trial court denied the motion, and the Court of Appeal affirmed.

The FTCA focuses on the following language from the *Cecil* decision wherein the Court of Appeal discussed why that action fell within section 393(b): "Most assuredly Arden is prosecuting a cause *for redress against interference with its personal rights and property*. The Director of Agriculture has gone into the county of Los Angeles, has inquired into alleged violations of law by Arden, and has issued an order which will put an end to Arden's business as a distributor of milk by revoking its license, unless such revocation is avoided by the payment of an additional sum for milk produced, as fixed by the findings of the department. Or we may say that Arden has been assessed some $16,000 because of the manner in which it has conducted its business in the county of Los Angeles, and if it fails to pay that amount, the right to carry on its business in and from the county of Los Angeles will be ended by the revocation of its license. *We are not considering a mere general order issued by the Director of Agriculture applicable alike to all milk distributors in the state or to those engaged in certain branches of the*

*industry, but an adjudication relating to particular practices and transactions of a single milk distributor engaged in business in Los Angeles County and which directly affects its property located in its principal place of business.* We think that the act of the director which will thus operate to Arden's detriment is essentially of the type of acts which the courts have had in mind and which they have described as *affirmative acts and those which interfere with the property or rights of third persons*." (*Cecil, supra,* 59 Cal.App.2d at pp. 796–797, italics added.)

The FTCA contends the language of this case should be seen as limiting actions falling under section 393(b) to those affecting the personal or property rights of the individual plaintiff, and not those involving the public at large. However, we do not read it so broadly.

First, although the Court of Appeal in *Cecil* discussed the fact that the plaintiff's claim sought "redress against interference with its personal rights and property" (*Cecil, supra,* 59 Cal.App.2d at p. 796), it in no way held that such rights are *required* for section 393(b) to be applicable. Further, in discussing the holdings of *McMillan, Bonestell* and *Welch,* upon which it relied in holding that the *Cecil* case fell within section 393(b), the Court of Appeal stated: "None of the cases has done more than hold that acts which the officer has failed to do or which he will do unless enjoined therefrom are not acts done within the meaning of the section and which provide the substance of the cause of action." (*Cecil, supra,* 59 Cal.App.2d at p. 796.) Thus, the *Cecil* court acknowledged that the only issue involved in those cases, upon which it relied for its own holding, was whether there had been an affirmative act by the public official.

Moreover, to the extent that the Court of Appeal used language in its discussion that implied that actions seeking redress of public rights would not fall within section 393(b), we again note that "[t]he holding of a decision is limited by the facts of the case being decided, notwithstanding the use of overly broad language by the court in stating the issue before it or its holding or in its reasoning." (*McGee v. Superior Court, supra,* 176 Cal.App.3d at p. 226.) The question of whether actions seeking to redress public rights fall within section 393(b) was not at issue in *Cecil.*

The FTCA's position is undermined further by a California Supreme Court decision that held that a case seeking the vindication of public rights *did* fall within the ambit of section 393(b). In *Regents, supra,* 3 Cal.3d 529, the plaintiff filed an action under the taxpayer standing provisions of section 526a, challenging resolutions adopted by the Regents of the University of California prohibiting the hiring of Communist Party members. The complaint alleged that the resolutions, and the expenditure of tax monies in

furtherance of the resolutions, were unconstitutional. (*Regents, supra*, 3 Cal.3d at p. 533.) Despite the fact that the claims were public in nature, the high court found section 393(b) applicable, and distinguished *Bonestell* and *Harris* as involving threatened future action, rather than affirmative acts that had already taken place, as occurred in *Regents*. (*Regents, supra*, 3 Cal.3d at pp. 537, fn. 10, 543.) If *Bonestell* or *Harris* created or affirmed a rule limiting section 393(b) to private actions that issue would have been addressed in *Regents*. In fact, the California Supreme Court, in reaching its decision, quoted the very language from *Harris* that the FTCA argues limits section 393(b)'s application to private claims: "Section 393 applies only to actions involving 'affirmative acts which directly interfere with the personal rights or property of the person complaining, to acts done as distinguished from acts threatened.' . . . [Citation.]" (*Regents, supra*, 3 Cal.3d at p. 537, fn. 10, italics omitted, quoting *Harris, supra*, 197 Cal.App.2d at p. 768.) Despite recognition of this language, the high court still held section 393(b) applied to an action seeking to vindicate public rights.

The FTCA asserts that *Regents* was in reality a private action because Angela Davis, then a University of California professor threatened with termination under the resolutions, intervened in the action and was vindicating her private right to avoid termination. However, the FTCA ignores the fact that the high court in *Regents* expressly held that her complaint in intervention had no impact on the main action for venue purposes: "That the intervenor's complaint in intervention rests, in part, on her contract of employment with the university does not affect the determination of the venue of the principal action. A complaint in intervention does not change the nature of the original suit. . . . Since the intervenor has chosen to join the taxpayers' action, any decision as to the venue for the taxpayers' action will also apply to the intervenor." (*Regents, supra*, 3 Cal.3d at p. 536, fn. 8.) The FTCA also attempts to characterize that action as a private one by claiming "the original taxpayer action itself arose from Ms. Davis's termination." However, this ignores the fact that the plaintiffs in the taxpayer action challenged several resolutions adopted in the 1940's, 1950's, and in September 1969. (*Regents, supra*, 3 Cal.3d at p. 533.) It was only the last one that was directed specifically at Ms. Davis. (*Ibid.*)

Moreover, taxpayer actions themselves clearly do not seek to vindicate private rights as they do not authorize individual taxpayers to recover money. Instead, "taxpayer suits provide a general citizen remedy for controlling illegal governmental activity." (*Connerly v. State Personnel Bd.* (2001) 92 Cal.App.4th 16, 29 [112 Cal.Rptr.2d 5].) A taxpayer plaintiff need not demonstrate any personal interest in the litigation, and no showing of special damage to the particular taxpayer plaintiff is required. (*Blair v. Pitchess* (1970) 5 Cal.3d 258, 270 [96 Cal.Rptr. 42, 486 P.2d 1242]; *Connerly, supra*, 92 Cal.App.4th at p. 29.)

The FTCA also seeks to characterize *Regents* as a private rights case based upon the county in which the action was filed. That was Los Angeles County, the county in which rested the campus at which Ms. Davis taught, and from which she was fired. However, the court's discussion of Ms. Davis in this regard was simply to determine whether, as required by section 393(b), at least some part of the cause of action arose in that county. The high court held that it did because some public funds had been expended in furtherance of the challenged ordinances by commencing the proceedings to terminate Ms. Davis in Los Angeles County. (*Regents, supra,* 3 Cal.3d at p. 542.) The court was not determining whether the action was private or public, but only whether there was an *affirmative act* which resulted in a wrong that was *felt, at least in part,* in Los Angeles County.

Two other more recently reported decisions also involving public rights have held that section 393(b) was applicable. In *Stoneham v. Rushen* (1982) 137 Cal.App.3d 729 [188 Cal.Rptr. 130], prison inmates and a nonprofit prisoners' rights organization challenged the standardization of the system used by the California Department of Corrections (the Department) to classify inmates for purposes of determining to which prison they should be assigned. The action challenged the failure of the Department to comply with the public notice and hearing provisions of the Administrative Procedure Act (APA) in adopting the regulations. (*Stoneham, supra,* 137 Cal.App.3d at p. 732.) The court found that the Department was required to follow the procedures set forth in the APA because the new scheme "[e]mbod[ies] . . . a rule of general application significantly affecting the . . . prison population." (*Stoneham, supra,* at p. 736.) The Court of Appeal, without discussing the public nature of the action, and distinguishing *Bonestell* and *Welch* as involving omissions or threatened actions as opposed to a completed act, held section 393(b) to be applicable. (*Stoneham, supra,* 137 Cal.App.3d at pp. 733–734 & fn. 5.)

In *Colusa Air Pollution Control Dist. v. Superior Court* (1991) 226 Cal.App.3d 880, 277 Cal.Rptr. 110, twenty-one manufacturers, retailers and contractors challenged a new regulatory program governing architectural coatings on several statutory and constitutional grounds. (*Id.* at pp. 883–886.) Although the plaintiffs had an economic interest in the outcome of the action, they were attacking the entire regulatory scheme, which would affect all similarly situated entities and individuals in California. (*Id.* at p. 888.) Without any discussion of private versus public rights, the Court of Appeal held the action was subject to section 393(b). (*Colusa, supra,* 226 Cal.App.3d at pp. 887–888.)

In sum, case law, to the extent we need consider it in light of the plain language of section 393(b), supports our conclusion that actions seeking to vindicate public rights are not excluded from the terms of section 393(b).

## C. *Public Policy Considerations*

The FTCA asserts that public policy considerations support their interpretation of section 393(b). However, analysis of the public policy behind section 393(b) supports *inclusion* of "public rights" cases within that statute.

■ As the California Supreme Court noted in *Regents, supra*, 3 Cal.3d at page 536, "The underlying purpose of statutory provisions as to venue for actions against state agencies is to afford to the citizen a for[u]m that is not so distant and remote that access to it is impractical and expensive. To that end, such provisions should be liberally construed in favor of the private litigant." (Fn. omitted.)

Thus, because the terms of section 393(b) are to be liberally construed in favor of plaintiffs, we may not imply a limitation on the types of cases that fall under that statute, where none appears on its face.

■ The FTCA asserts that public policy supports excluding public rights cases from section 393(b) because otherwise venue in such cases could be had "in any county in the State," because "the 'effects' of the injury are 'felt' by the public at large." However, under section 393(b), venue is proper in a county other than the public official's only where there is some concrete injury in that county, regardless of whether the action is considered private or public. For example, in this case it is alleged in detail that construction of the Toll Road would cause serious and specific environmental harm to an area of San Diego County, specifically, San Onofre.

Moreover, causes of action have been held subject to section 393(b) despite the fact that the injury caused by the official action could be felt statewide. In *Stoneham, supra*, 137 Cal.App.3d 729, the alleged injuries to inmates would have been experienced by inmates statewide. Likewise in *Colusa, supra*, 226 Cal.App.3d at page 888, the plaintiffs were doing "business statewide," and "[would] suffer injury to their business in every county." All that matters for purposes of section 393(b) is that some *part* of the injury occurred in the county in which the action was brought. (*Colusa, supra*, at p. 888.)

The FTCA contends that in public rights cases brought under CEQA venue in the county where the public official resides "makes sense" because the administrative record, which forms the evidence in such cases, lies in that county. The FTCA also argues that because petitioners have to demonstrate they participated in the administrative proceedings being challenged, they should also have to instigate formal litigation in that county.

However, that argument could be made as to any mandamus action, where the administrative record would be, and exhaustion of administrative remedies would occur, in the county where the public official resides, regardless

of whether public or private rights are asserted. The Legislature, in enacting section 393(b) has made a policy decision that such cases should be filed in the county where the injury occurred, *not* where the agency decision was made: "A cause arises in the county where the effects of the administrative action are felt, not where the agency signs the challenged order or takes the challenged action." (*Lipari v. Department of Motor Vehicles, supra*, 16 Cal.App.4th at p. 670, fn. 2.) " 'It is where the shaft strikes [the plaintiff], not where it is drawn, that counts.' " (*Regents, supra*, 3 Cal.3d at p. 542.) The FTCA's reasoning thus directly contradicts the public policy expressed by section 393(b).

D. *Legislative History of Section 393(b)*

The FTCA asserts that the Legislature, by reenacting and amending section 393(b) (and its predecessor) without substantive change, implicitly ratified the "private rights" limitation they propose case law has grafted onto section 393(b). However, this assumes that cases added such a limitation to section 393(b), a conclusion we have already rejected.

Moreover, as we have already noted, because the language of section 393(b) is clear, its legislative history need not be considered. (*Hunt v. Superior Court, supra*, 21 Cal.4th at p. 1000.) Nevertheless, we did review the legislative history of section 393(b) (and its predecessor). Nothing in that legislative history supports the FTCA's position. Indeed, to the extent that it informs the issue at all, it supports petitioners' position. In the 1872 version of section 393, a note following the statute cites *Elliot* and *Hopkins*. (Former § 393, enacted 1872.)

Also, to the extent that some of the early cases interpreting section 393(b) used language unnecessary to their holdings, the Legislature's failure to address those statements does not imply acquiescence in an implied limitation to section 393(b): "To acknowledge that the Legislature has not altered the *holdings* in specific prior cases does not imply that it has approved the broad *language* in those decisions . . . . It is a foundational principle that: ' "[T]he language of an opinion must be construed with reference to the facts presented by the case, and the positive authority of a decision is coextensive only with such facts." ' [Citations.]" (*Harris v. Capital Growth Investors XIV, supra*, 52 Cal.3d at p. 1157.) "The fundamental distinction between holdings and mere descriptive language applies no less to our perceptions that the Legislature has acquiesced in prior judicial decisions. [Citation.] The Legislature is a pragmatic political body; its primary concern is not to study and refine the language used in judicial decisions, but to accomplish practical results. As such, it is unlikely to analyze and rewrite broad judicial language as an abstract exercise . . . ." (*Ibid.*)

Thus, the Legislature's failure to amend section 393(b) to address the purported limiting language contained in cases cited by the FTCA does not show an agreement that such a limitation exists. Rather, it demonstrates the Legislature's belief that no such amendment was necessary because the holdings of those cases did *not* create such a limitation contrary to the plain language of the statute.

## DISPOSITION

Let a writ of mandate issue directing the respondent Superior Court for the County of San Diego to vacate its order of July 26, 2006, transferring venue to the Orange County Superior Court. The stay issued by this court on September 7, 2006, is vacated. Costs on the writ proceeding are awarded to petitioners.

McDonald, J., and Irion, J., concurred.

The petition of real parties in interest for review by the Supreme Court was denied July 25, 2007, S153777. Werdegar, J., did not participate therein.